No.  **91-142**

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1992**

IN RE THE MARRIAGE OF
KELLY JEAN JOHNSON JACOBSON,

        Petitioner and Respondent,

  and

RODNEY JOSEPH JACOBSON,

        Respondent and Appellant.

FILED

JAN 2 8 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Third Judicial District,
In and for the County of Deer Lodge,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Mark  A.  Vucurovich;  Henningsen,  Vucurovich  &
Richardson, Butte, Montana

      For Respondent:

          Deirdre Caughlan; Dunlap & Caughlan, Butte, Montana

                Submitted on Briefs:  December 12, 1991

                            Decided:  January 28, **1992**

Filed:

_____
/   Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a dissolution action in the Third Judicial District, Deer Lodge County. The District Court ordered the appellant, Rodney Jacobson [Rodney), to make child support payments in the amount of $612 per month and maintenance payments in the amount of $500 per month. Rodney contends the District Court's treatment of noncash, job related benefits and bonuses was in error and resulted in an award he simply cannot pay. Because the District Court's award is within the statutory guidelines and is supported by the record, we affirm.

The issues for our review are:

1) Did the District Court err in awarding maintenance in the amount of $500 per month?

2) Did the District Court err in awarding child support at an amount of $612 per month?

The respondent, Kelly Jean Johnson Jacobson [Kelly), and the appellant, Rodney, were married in 1982. Both parties had been previously married. Rodney has two children from his previous marriage. Prior to September, 1990, the time of this action, Rodney made child support payments of $102 per month. Currently, both children appear to live with Rodney and he no longer makes those payments.

One child, Matthew, was born on August 19, 1985, issue of Rodney and Kelly's marriage. On September 6, 1990, the District Court entered a decree dissolving the parties' marriage, dividing assets and obligations, providing for the custody and support of

2

Matthew and providing for maintenance to Kelly.

Rodney is employed by and a shareholder in a closely held family ranch corporation, Bud Jacobson and Sons, Inc. The majority shareholder, Rodney's father, owns 52% of the corporation's 1,500 shares of stock. Rodney was given 52 shares of stock and purchased 308 more shares in 1974 for $154,000. Rodney's 360 shares comprise a 24% ownership in the corporation. The terms for the purchase of the 308 shares provide for principal payments in the amount of $7,675 per year and interest payments of 5% per annum on the unpaid balance for a period of twenty years. The record reflects that Rod received bonuses from the corporation to make these payments from 1975 until 1986. The 1987 bonus appears to have covered the principal but not the interest payment. Rodney has been in arrears on this obligation since 1987. Testimony received at trial estimated the corporation's assets at between $1 and $1.2 million.

Rodney's current monthly cash income is $1,000. In addition, he receives a house, utilities, a vehicle, gas, clothes and medical insurance. Until 1989, Rodney's benefits also included groceries: however, his monthly base pay was only $500. The extent of the use of corporate funds for other living expenses is in dispute. Kelly contends that all of their personal expenses could be and often were drawn from the corporate account. It is Rodney's testimony that personal and business expenses were kept separate.

Rodney's 1987 tax return reflects gross earnings of $13,675. Rodney testified that his 1988 tax return reflects earnings of $22,500. The District Court found, based on the testimony of the

parties and the expert testimony of William Honzel, that Rodney's wages and benefits reflect a net economic benefit of $4,500 per month.

Prior to the marriage, Kelly earned sixty dollars per week tending bar. Throughout the marriage Kelly stayed at home, helping out with ranch chores and later caring for Matthew. She currently has custody of Matthew and is a student pursuing a degree in computer science and accounting. The record indicates that she ha5 borrowed over $20,000 from a personal friend to pay for the support of herself and the child since the parties separated. The District Court awarded Kelly maintenance and child support. Rodney appeals.

Section 40-4-203(1), MCA, provides the basis for granting maintenance. The spouse seeking maintenance must:

> (a) lack(s) sufficient property to provide for his reasonable needs: and

> (b) is unable to support himself through appropriate employment. . . .

We recently held that the criteria of § 40-4-203, MCA, must be satisfied before maintenance can be awarded. Marriage of Eide, (Mont. 1991), ___ P.2d ___, 48 St.Rep. 1054. Furthermore, we made clear that "[a] district court's wide discretion in determining a maintenance award will not be disturbed unless it is clearly erroneous." Eide, 48 St.Rep. at 1055; citing In re Marriage of Aanenson (1979), 183 Mont. 229, 235, 598 P.2d 1120, 1123.

Rodney contends that Kelly enjoys a better lifestyle outside of the marriage than enjoyed during the marriage. Furthermore, Rodney contends that Kelly chooses to be unemployed although she

4

would be able to support herself if she so desired.  Therefore, Rodney argues, Kelly is not entitled to maintenance.  Rodney points to Kelly's decision to spend her time as a student rather than to work.  He asks the Court to infer from the average balance of Kelly's pre and post marriage checking accounts that an increased average balance, post marriage, reflects an increased standard of living.  The District Court declined to make such an inference and so do we.

The record supports the District Court's finding that the parties enjoyed a lifestyle during marriage which Kelly, without retraining, would be unable to achieve.  To achieve a lifestyle more equivalent to that of the marriage, the court ordered Rodney to pay *$500* a month in rehabilitative maintenance for three years to enable Kelly to complete her education and become employed.

Section 40-4-203(2), MCA, provides the factors the court must consider in determining the amount and duration of a maintenance award.  The factors to be considered are:

> (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
> (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment:
> (c) the standard of living established during the marriage;
> (d) the duration of the marriage;
> (e) the age and the physical and emotional condition of the spouse seeking maintenance:  and
> (f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

5

Rodney notes subsection 2(f) above, provides as a factor, the ability of the paying spouse to meet his own needs while meeting the needs of the spouse seeking maintenance. Rodney contends that he has only $1,000 per month of income with no other assets other than the 52 gifted shares of stock. He contends that because his other benefits cannot be converted into cash, there is no way for him to pay **$1,112** per month in child support and maintenance and provide for the necessities of his own and his other children's lives.

We have held that a spouse's ability to pay maintenance while meeting their own personal expenses is an element that should be given great weight but is not always the determining factor. Marriage of Cole **(1988), 234** Mont. **352, 763** P.2d **39.** While the District Court's findings fail to provide the basis for Rodney's financial ability to provide the amount awarded, there is evidence in the record that it is regular practice for the corporation to declare bonuses to pay expenses that Rodney has incurred. It is difficult to clearly discern from the record the accounting methods employed by the corporation; however, several examples are provided where the corporation met Rodney's obligations that extended beyond his monthly draw. In addition to corporate bonuses allowing Rodney to make his payments for shares of corporate stock, we note corporate bonuses were declared allowing Rodney to make $50,000 in payments to his previous wife following dissolution of their marriage.

Rodney presented evidence and argues that the corporation is

not financially able to declare bonuses at this time because any income it receives is directly paid to Bud and Edna Jacobson who have individually loaned the corporation $166,000 for operating expenses. In Marriage of Cole we determined that a partnership whose profits were committed to servicing the partnership's debt was still an income producing asset for purposes of maintenance. Marriage of Cole, 234 Mont. at 358. In the instant case, we conclude that Rodney's interest in Bud Jacobson and Sons, Inc., is an income producing asset.

The District Court explicitly awarded maintenance to allow Kelly to re-train herself, gain employment, and to have a standard of living more closely aligned with that of the marriage. These are all proper factors for the court to consider in determining the amount and duration of a maintenance award. Furthermore, because the majority of the property was owned by the corporation, Rodney continues to benefit from its use while Kelly has nothing therefrom. The decision of the District Court to award maintenance at an amount of $500 per month is supported by substantial evidence, is not clearly erroneous and is affirmed.

We now turn to the award of child support. The court determined that under the Uniform Child Support Guidelines, 13.6% of the parties income should be contributed to child support. The 13.6% was based upon and applied to the court's finding that the parties enjoyed a standard of living such that the economic benefit derived from Rodney's work for the corporation was equivalent to $4,500 per month. Absent a clear showing of abuse of discretion a

7

district court's award of child support will be upheld. Marriage of Mitchell (1987), 229 Mont. 242, 245, 746 P.2d 598, 600. (Citations omitted.)

Rodney contends the court erred in its valuation of his income and as a result have made an award beyond his means. Conclusion of law **9** entered by the District Court states:

> 9.  That during the course of the marriage, the parties received corporate benefits from Bud Jacobson & Sons in addition to the salary received. That the average monthly benefits exclusive of the salary are reflected in Petitioner's "Exhibit 5" presented at the temporary maintenance hearing and incorporated by reference at the trial and are summarized as follows:
>
>> **A.** That the corporation paid monthly bills in a sum ranging from $1,384.00 to $3,016.00, exclusive of rent averaging $2,177.00 per month.
>>
>> B.  That the parties received the use of a 4 bedroom, 3 bathroom house, gasoline, use of corporate vehicles and ranch food products valued at approximately $1,000.00 per month.
>>
>> C.  That the wages in 1987 were approximately $1,666.00 per month.
>
> That such benefits and wages reflect a net economic benefit of a value of approximately $4,500.00

Rodney first argues that the court based his monthly income on the 1987 tax returns and determined it to be $1,666 per month when in fact the 1987 tax return shows an average monthly income of $1,114 per month. We have recommended that the court consider at least two years of income tax returns when determining the gross income of an obligor parent. **A** Uniform District Court Rule on Child Support Guidelines (1987), 227 Mont. 1, 5. Rodney testified that his 1988 tax return indicated earnings of $22,500 or $1,875

per month.  While it is not clear how the court arrived at the figure of **$1,666,** the evidence makes clear that it is not excessive.  Furthermore, the court is not bound by federal or state income tax returns in determining the monthly income.  Marriage of Sullivan **(1990),** 243 Mont. 292, **794** P.2d **687.**

Next, Rodney argues that the court improperly placed a rental value of **$2,177** per month on the corporate home.  We disagree.  Our reading of the challenged finding indicates the court valued the home, gasoline, use of corporate vehicles and ranch food products at $1,000 per month.  The **$2,177** was allotted as an average for other bills and expenses.

The District Court relied on the expert testimony of William Honzel in determining the overall value of compensation Rodney received for his work for the corporation.  The District Court's use of $4,500 as monthly income for purposes of computing child support is supported by credible evidence.  It was not an abuse of the court's discretion to accept Honzel's testimony.  We conclude that child support in the amount of $612 per month was appropriately based on the Uniform Guidelines and evidence presented to the court.  The District Court did not abuse its discretion and is therefore affirmed.  Affirmed.

_____
Justice

9

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10

January 28, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Mark A. Vucurovich
Henningsen, Vucurovich & Richardson
P.O. Box 399
Butte. MT  59703

Deirdre Caughlan
DUNLAP & CAUGHLAN
Attorney at Law
27 W. Broadway
Butte, MT  59701

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY _____
    Deputy