No. 93-581

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

ANTHONY CLARK WELZENBACH,

     Petitioner and Appellant,

-v-

JOHANNA BANGEMAN,

     Respondent and Respondent.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

     Anthony C. Welzenbach, Kalispell, Montana (pro se)

     For Respondent:

     James C. Bartlett, Hash, O'Brien & Bartlett,
Kalispell, Montana

Submitted on Briefs:  November 3, 1994

Decided:  January 18, 1995

Filed:  JAN 18 1995

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from the issuance of Findings of Fact, Conclusions of Law and Decree by the Eleventh Judicial District Court, Flathead County. We affirm.

We restate the issues on appeal:

I. Did the District Court err in determining that the best interests of the children called for joint custody with Johanna to be the primary custodian?

II. Did the District Court abuse its discretion by raising child support payments from $175 per month per child to $314 per month per child for future payments and in determining that Anthony owed back child support from 1990?

Anthony C. Welzenbach (Anthony) and Johanna Bangeman (Johanna) lived together from 1975 until 1979. Two children were born to the couple, Corinna, born October 29, 1977, and Wilhelm, born September 22, 1975. The couple entered into an agreement commencing in July, 1981 in which Anthony would pay Johanna $175 per month per child.

By August 5, 1985, Anthony owed $11,265.00 in back child support. The Eleventh Judicial District Court issued a writ of execution and Anthony's bank account was executed upon for the full amount. On December 22, 1986, another writ was issued by the District Court for $3,500 in back child support. However, Anthony did not have enough money in his account at that time for successful execution of the writ.

On March 13, 1987, Johanna and Anthony entered into another agreement in which Johanna would receive a 1975 Volvo and Anthony

2

promised to put $1,000 in trust for the children and to pay for Wilhelm's substantial orthodontist bill. In return, Anthony's child support would be lowered from $350 per month to $250 per month and all child support would be considered current. Anthony did not put the $1,000 in trust nor did he pay the orthodontist's bill.

On July 20, 1988, Johanna filed a petition seeking to have Anthony show cause why he had not honored the agreement. Johanna also sought permission to move from Montana to Hawaii. Anthony initially objected, but later entered into another agreement with Johanna in which Anthony agreed to pay $175 per month per child as long as the children were living with her. If the children moved back to Montana with him, the payments were to stop, but Johanna did not have to pay support to Anthony during those times in which he had residential custody of the children. This agreement was approved by the court in an order dated November 3, 1988.

Johanna moved to Hawaii with the children for the school year of 1988-89. Anthony also moved to Hawaii to be close to the children. The children stayed in Montana with Anthony during the next school year. In 1991, Johanna moved back to Montana, to a house very near Anthony's. From this time, the children have gone back and forth between their parents' homes at will. Each child has a bedroom in both houses and the children have been permitted to go to either home when they wanted.

On April 15, 1991, Johanna filed a petition with the District Court seeking to recover $1,925 in back child support which she

3

claimed that she was due for the time the children had been at her house. The court issued its Findings, Conclusions and Decree on May 4, 1993, requiring Anthony to pay support in the amount of $314 per month per child, to pay Johanna's attorney's fees, to pay her the back child support he owed, and to accept a joint custody arrangement in which Johanna would be the primary custodian with Anthony to have the children about one third of the time.

From the court's order, Anthony appeals pro se.

I.

Did the District Court err in determining that the best interests of the children called for joint custody with Johanna to be the primary custodian?

Anthony argues that the court did not consider the wishes of the children in this matter. According to Anthony, the children want the arrangement to stay the way it is now. He claims that he has the children the majority of the time and that it is he who does the majority of the parenting of the teenage children. He does not want the court to set a rigid schedule that the children must follow.

Johanna argues that the children need more predictability in their lives than is now present. She states that she and Anthony cannot agree on the structure that the children need so the court correctly determined what the structure would be for mealtime and bedtime.

The court noted that Anthony had not correctly brought the issue of joint custody before the court because he had not

submitted an affidavit seeking a change in custody. However, since Johanna had not objected to the joint custody, the court determined after talking to the children that joint custody would be preferable to sole custody by one parent. The court, however, determined that Johanna should be the primary caretaker, with the children staying with Anthony a little over a third of the time.

Anthony objects not to the joint custody arrangement but to the very specific and structured court order dictating precisely when the children should be where. He argues that the children do not want the current arrangement changed and that the current arrangement does not reflect a situation where Johanna has the primary care for the children.

We review a District Court's findings to determine whether they are clearly erroneous. In re Marriage of Olsen (1993), 257 Mont. 208, 848 P.2d 1026. The court's findings are not clearly erroneous if they are supported by substantial evidence and the court has not misapprehended the evidence before it. Further, if the above are satisfactory, we will still determine that a court is clearly erroneous if we are left with the firm conviction that the court has made a mistake. Ragland v. Sheehan (1993), 256 Mont. 322, 846 P.2d 1000. Absent a clear showing of abuse of discretion a district court's award of child support will be upheld. In re Marriage of Jacobson (1992), 251 Mont. 394, 825 P.2d 561.

The court issued the following pertinent findings:

11. The court has interviewed the children, and having heard the evidence and considered the proposals of each party, the court adopts the proposal submitted by Johanna.

5

. . .

13.  In adopting the schedule, the Court is cognizant of the fact that the children will be spending a substantial period of time with Anthony.  The Child Support Guidelines generally recognize that approximately one-third of the days in a year are to be spent with the parent who is to pay support.

. . .

15.  Johanna has presented to the court a calendar establishing the days Wilhelm and Corinna will be with either parent; the structure is reasonable and in the best interest of the children.  This permits Wilhelm to reside with Johanna or Anthony from time-to-time, and it permits Corinna to be with Anthony a great deal of the time.  In adopting the schedule, and in light of the proximity of the parents' residences, each child can still request one parent to stop by to give rides to school or to have short visits.  However, the child will know where he or she is to eat and sleep after school, on weekends and during the summer months.

The court also indicated that Anthony and Johanna should have little contact with each other and should refrain from degrading each other in front of the children.  The record indicates a continuing bitter relationship between the parents.

Because of the couple's inability to agree on what the children needed by way of structure, the court set the structure. As far back as August 18, 1980, the Director of the Family Court Services indicated that "hard and fast" rules regarding custody, visitation and support should be made in this case because the parents could not reach any kind of agreement.  The Director noted in his report to the court at that time, that it was important for the children to have a "normalization of residency."

Johanna testified that she had tried to set up schedules for the children so that each parent would know when the children were to be in his or her home.  Anthony, however, resisted any attempt to set up a schedule, preferring to make day-to-day arrangements.

6

Both parties testified that after the 1989 school year when Johanna returned to Montana, the couple were unable to agree on how to structure the children's day-to-day living arrangements. It was, therefore, reasonable for the court to make such arrangements. The record indicates that the children needed structure.

As part of the needed structure, the court determined that one parent should be designated the primary residential custodian. Both parents testified that joint custody was appropriate, but disagreed as to who should have primary responsibility for the children. While the record contains uncontested evidence to show that both parents cared for and loved these children, the original custody agreement designated Johanna as the residential parent. There is nothing in the record to indicate that this was an incorrect choice.

Johanna actively sought more structure for the children while Anthony failed to cooperate with the court or Johanna in establishing that structure. Substantial evidence supports the court's choice of primary custodian. We note that Anthony testified that he did not object to the children having structure in their lives but only to his ex-wife's ability to determine that structure. However, Anthony did not present evidence at trial in opposition to the suggested structure presented by Johanna.

Further, Anthony provided no evidence to indicate that he is the parent who spends the most money on the children and does the most parenting as he claims. Johanna provided the court with a specific set of forms necessary under the Uniform Child Support

7

Guidelines. These forms showed the amount of money spent on the children and on her household budget in general. Anthony refused to fill out these forms. Johanna also submitted a proposed schedule for the children to follow during the upcoming year as far as meals and sleeping arrangements. Anthony provided nothing but declaratory statements about the money he has spent on the children. The court spoke with the children and the transcript of that conversation shows that both children cared equally for the parents and wanted to spend equal time with them.

We conclude that substantial evidence exists that joint custody with Johanna as the primary custodian is in the best interest of the children.

## II.

Did the District Court abuse its discretion by raising child support payments from $175 per month per child to $314 per month per child for future payments and in determining that Anthony owed back child support from 1990?

Anthony argues that he now pays the majority of the expenses needed for the children and that he should not have to pay more support. He contends that the court abused its discretion in assessing him more support because the court failed to consider the amount of money he spends on both teenagers. Further, Anthony argues that the court did not consider his real financial status when raising his monthly support payments. Anthony argues that his yearly earnings are much less than the court finally determined. Because of the amount of money he spends on his children and

because he alleges the original agreement setting the amount of $175 per month per child ended at 1990, Anthony believes that he should not have to pay retroactive child support.

Johanna argues that Anthony did not cooperate with her when she was attempting to determine how much child support he should pay. She contends that he has been less than truthful in declaring his actual yearly earnings. Further, Johanna argues that the agreement setting the $175 total did not end at the year 1990 but was meant to continue until the children became emancipated or until the children were past the age of minority.

The court made the following findings of fact:

6. The minor children have resided with Johanna from time to time. Anthony was required to pay child support at the rate of $175.00 per month per child for the months the children have been with Johanna. As of April 15, 1991, the date the present Petition was filed with this Court, Anthony owed Johanna the sum of $1,925.00. Johanna presented an accounting for said sum of money, and Anthony did not contest the time periods that the children were with him or Johanna. Anthony contended that the child support obligation should not be reinstated until there was a new court order. Anthony's position is untenable; the Court Order dated November 3, 1988 automatically reinstated his obligation to pay child support during the time the children were with Johanna.

7. Johanna has been forthright in disclosing all of her financial information for the purpose of completing the worksheet for the Uniform Child Support Guidelines. Anthony has not been as forthright in disclosing his finances. Since entry of the original child support order, he has acquired eight boats and ten parcels of real estate, including his residence. He is appealing federal tax liens that have been filed against him. At the same time, Anthony maintains that his annual income throughout that time period is approximately $30,000 per year, with the exception of 1990, when he made $75,515.00. He is closely affiliated with a corporation, with shares issued to his relatives, wherein he is identified as the business representative.

8. Johanna has projected Anthony's gross income, both disclosed earnings and imputed income, to be $80,000 per year, but the Court was obliged to reject as hearsay her evidence in support of that contention. Anthony has countered by failing to provide the Court with a worksheet for determination of child support, and he argues that no monies are due from him to Johanna. Yet he projects a gross income of at least $30,000.00 per year. While the Court is not compelled to do a worksheet for Anthony, assuming a $6,120.00 deduction for taxes and FICA, with an addition of $5,000.00 for the 2% assessment, Anthony would have net available resources of $28,880.00, 26.1% of which is $7,538.00. Using his figures, he would be required to pay $628.00 in child support.

9. The Court is therefore presented with a request from Johanna for child support in the sum of $1,122.00, and with a refusal of Anthony to pay any child support at all, but with his own Affidavit supporting an obligation to pay $628.00.

The record shows that Anthony's financial Affidavit dated August of 1992, states that he makes an average of $1,990.00 net income per month. He testified to the accuracy of this figure. Both opposing counsel and the court used this figure to arrive at an appropriate figure for support of the two teenagers. The figure, based upon calculations from the Uniform Child Support Guidelines and amounting to $628 per month for both children, was presented to Anthony while he was on the stand. Although Anthony responded to opposing counsel's question, he did not deny that this figure was accurate.

Anthony did not do any of the calculations from the Uniform Child Support Guidelines, nor did he fill out the appropriate forms so someone else could do the calculations. While the Guidelines are not part of the record on appeal, both the District Court and opposing counsel had the Guidelines and used them to arrive at the

10

same figure--$628 per month--based upon the statements in Anthony's financial affidavit. The evidence presented at trial shows that Anthony owns various pieces of realty valued at $192,000 as well as eight boats. Because Anthony refused to cooperate and submit the appropriate Uniform Child Support Guidelines forms, the court was forced to speculate as to how Anthony could have purchased valuable land and boats on the meagher salary he purported to make. Further, Anthony did not provide any evidence to counter the appropriateness of the $628 figure; nor did he present an alternative amount because he felt that he supported the children adequately now.

Given Anthony's uncooperative attitude, his own financial affidavit specifying that he brings home an average of $1,990 per month, and his failure to present a cogent argument against the $628 amount, we hold that the District Court did not abuse its discretion in raising the child support payments from $350 per month to $628 per month.

Anthony also argues that the agreement with Johanna concerning the $175 per month per child was only for the time period in which Johanna was in Hawaii. The agreement, according to Anthony, ended in 1990. Johanna contends that the agreement specifically states that the $175 per month per child was to last until the children reached 18. The court interpreted the agreement in the same way Johanna did. Further, the court stated in its court order issued in November of 1988 that the order had the effect of cementing this total as the continuing support payment for which Anthony should be

responsible.

The record indicates that the original 1981 order of the court set the sum of child support at $175 per month per child. The record also shows that the parties entered into a stipulation dated March 13, 1987. The pertinent part of that stipulation states:

> 2. That Petitioner has entered into a contract to pay for the orthodontic care of Wilhelm, which will require substantial monthly payments, and by reason of this indebtedness, it is agreed that the child support shall be reduced from $350 per month to $250 per month for a period of 32 months, commencing February 1, 1987 and continuing through the 1st day of September, 1989. Commencing with the 1st day of October, 1989, the child support obligation shall once again be $350.00 per month, or $175.00 per month per child, continuing as to each child until such time as the child has reached the age of majority and has graduated from high school, or becomes emancipated, or dies, whichever first occurs.

On March 19, 1987, the court issued an order based on this stipulation which stated:

> 2. That commencing February 1, 1987, and continuing through the month of September, 1989, Petitioner shall pay to Respondent, as and for child support, the sum of $125.00 per month per child, due and payable on or before the 1st day of each month;
>
> 3. That commencing October 1, 1989, Petitioner shall pay to Respondent, as and for child support, the sum of $175 per month per child, due and payable on or before the 1st day of each month and continuing as to each child until such time as the child reaches the age of majority and has graduated from high school, or becomes emancipated, or dies, whichever first occurs; (Emphasis added.)

A year later in April, Johanna filed an application for hearing on contempt because Anthony had not paid the orthodontist and was behind in child support. The court issued an order to show cause why Anthony should not be held to its previous 1987 court order. After the issuance of this order and before the hearing, Anthony

paid the child support he owed.

In August of 1988, Johanna filed a petition to modify the original 1987 stipulation because Anthony had not paid $1,000 into a trust account for the children, had not paid the orthodontist and had not paid child support. The court issued another show cause order to which Anthony vehemently objected and unsuccessfully sought temporary custody of the children.

In September of 1988, before the court could rule at a hearing, the couple submitted a signed stipulation making special provisions for their children for a period of several years. The document stated:

> 7. Beginning September 1, 1988 and continuing each month thereafter, and so long as the children reside with Respondent, Petitioner shall pay $175.00 per month per child, due and payable on or before the 1st day of each month and <u>continuing as to each child until such time as the child reaches the age of majority</u> and has graduated from high school, or becomes emancipated, or dies, whichever first occurs . . . (Emphasis added.)

Anthony objects to using this 1988 stipulation because one part of the document states:

> 10. The time frame of this agreement is to provide for the care, education and support of the children through the end of the school year 1990.

Anthony argues that because of this limitation in the agreement, he was released from any responsibility as of 1990 and does not owe back child support.

The court issued an order on November 3, 1988, stating that the parties should abide by the above referenced stipulation. The District Court in its findings and conclusions based upon the August, 1992 trial involving custody and child support, stated that

13

its 1988 court order and the parties' stipulation both indicate that the parties agreed to the amount of $175 per month per child until the children reached the age of majority. Therefore, the court determined that Anthony owed back child support from the time of this court order.

We have carefully reviewed the 1988 stipulation and the ensuing court order. We conclude that the District Court was correct. The document's blanket statement concerning $175 child support was followed by a detailed description of what the parties had planned in terms of residence in Hawaii and then in Montana for the next two school years. The particular plans involving the mother's trip to study in Hawaii and the father's subsequent custody of the children during the following year, is very explicit. The special considerations concerning residence concluded at the end of the 1989-1990 school year.

It is obvious to us that the parties understood that the next two years required some special considerations for the children because of the mother's trip to Hawaii. The need for special considerations would be over in 1990 and the children would resume their ordinary routine with Anthony to pay $175 per month per child in child support. Any other reading of this stipulation would be ludicrous.

Anthony has not paid child support since 1990 and he, therefore, owes the $175 per month per child total for all times in which Johanna had the children. We conclude that the District Court did not abuse its discretion in assessing past child support

14

from 1990.

Affirmed.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of this Court and by a report of its result to the West Publishing Company.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices