DA 07-0406

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 435

IN RE THE MARRIAGE OF:

CHARLES K. GRAHAM,

　　　　　　Petitioner and Appellant,

　　and

ERIN E. GRAHAM,

　　　　　　Respondent and Appellee.

APPEAL FROM:　District Court of the Sixteenth Judicial District,
　　　　　　　In and For the County of Fallon, Cause No. DR 2006-18
　　　　　　　Honorable Joe L. Hegel, Presiding Judge

COUNSEL OF RECORD:

　　　　　For Appellant:

　　　　　　R. W. Heineman, Attorney at Law, Wibaux, Montana

　　　　　For Appellee:

　　　　　　Albert R. Batterman; Batterman Law Offices, P.C., Baker, Montana

　　　　　　　　　　Submitted on Briefs:　July 2, 2008

　　　　　　　　　　　　　Decided:　December 23, 2008

Filed:

　　　　　_____
　　　　　　　　　Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Charles K. Graham (Chuck) appeals from the findings of fact, conclusions of law and decree entered by the Sixteenth Judicial District Court, Fallon County, in its judgment dissolving his marriage to Erin E. Graham (Erin). We affirm.

¶2     The issues are:

¶3     1.   Did the District Court err in calculating Chuck's income for child support purposes?

¶4     2.   Did the District Court err in awarding Erin primary residential custody of the parties' son?

¶5     3.   Did the District Court err in awarding Erin $500 a month as maintenance?

BACKGROUND

¶6     Chuck and Erin were married in 2002 in Oklahoma. Their marriage produced one son, who was 3½ years old at the time of trial. Erin was not employed outside the home during the marriage. For purposes of pursuing Chuck's employment in ranching, horse training, welding and heavy equipment operation, the family moved to Colorado and then to Baker, Montana.

¶7     Chuck and Erin separated in March of 2006, when Erin and their son went to Oklahoma to visit extended family and Chuck, who remained in Montana, filed for dissolution of the marriage. After a one-day trial, the District Court divided the modest marital estate, adopted a parenting plan awarding Erin primary residential custody of the parties' son, and ordered Chuck to pay Erin $960 per month in child support, and $500 per

2

month in spousal support for 36 months.  Chuck appeals.

## STANDARDS OF REVIEW

¶8     We review an award of child support for abuse of discretion.  *Albrecht v. Albrecht*, 2002 MT 227, ¶ 7, 311 Mont. 412, ¶ 7, 56 P.3d 339, ¶ 7 (citation omitted).  We review findings of fact in a child custody determination to determine whether they are clearly erroneous.  Because the trial court is in a superior position to weigh the evidence, we will not overturn a child custody determination absent a clear abuse of discretion.  *Czapranski v. Czapranski*, 2003 MT 14, ¶ 10, 314 Mont. 55, ¶ 10, 63 P.3d 499, ¶ 10 (citations omitted).  In reviewing a district court's division of marital property and maintenance award, we first determine whether its underlying findings are clearly erroneous.  Absent clearly erroneous findings, we will reverse a district court's property division and maintenance award only if we identify an abuse of discretion.  *In re Marriage of Payer*, 2005 MT 89, ¶ 9, 326 Mont. 459, ¶ 9, 110 P.3d 460, ¶ 9 (citations omitted).

## ISSUE 1

¶9     **Did the District Court err in calculating Chuck's income for child support purposes?**

¶10    The District Court found that Chuck's income was $23,222 and $28,000 in 2004 and 2005, respectively, and he had earnings of $84,103.85 in 2006.  The court further found that, from January 1 through February 11, 2007, Chuck—who was then working as a free-lance welder—had gross wages of $15,123.32, plus subsistence of $75 per day and $14 per hour to cover truck expenses.  In its conclusions of law, and based on testimony that the job Chuck was working would last at least another 16 to 18 months, the court projected Chuck's annual

3

income available for child support purposes as $123,917. In so doing, the District Court relied on Admin. R. M. 37.62.108(3)(b), which is part of the Child Support Guidelines promulgated by the Montana Department of Public Health and Human Services pursuant to § 40-5-209, MCA.

¶11 Admin. R. M. 37.62.108(3) provides that, to the extent possible, income for child support shall be annualized using one of two methods. Pursuant to Admin. R. M. 37.62.108(3)(a), "seasonal employment or fluctuating income may be averaged over a period sufficient to accurately reflect the parent's earning ability." Alternatively, Admin. R. M. 37.62.108(3)(b) provides that, in annualizing income for child support, "current income or expenses may be projected when a recent increase or decrease in income is expected to continue for the foreseeable future."

¶12 In *Albrecht*, ¶ 11 (citations omitted), upon which Chuck relies, we observed that a district court must follow the Guidelines in determining child support obligations unless clear and convincing evidence is produced demonstrating that doing so would be unjust to the child or to any of the parties, or inappropriate in that case. We also noted that the instructions for completing the Guidelines' child support worksheets provide that determining the income of a self-employed parent "usually" requires an average of at least three years of net income from that parent's income tax returns. *Albrecht*, ¶ 11. In that case, relying in part on Admin. R. M. 37.62.108(3)(a), we concluded the district court had abused its discretion in basing its determination of a self-employed parent's income on only one year's net earnings. *Albrecht*, ¶¶ 12, 14.

4

¶13 In the present case, the facts may have supported application of the first method for annualizing Chuck's income, set forth in Admin. R. M. 37.62.108(3)(a) and applied in *Albrecht*, because Chuck was self-employed. However, given Chuck's recent increase in income—which was expected to continue for the foreseeable future—the District Court chose instead to apply the second method for annualizing income, set forth in subsection (3)(b) of the rule. Application of that method does not require the court to average three years' income. Moreover, Chuck does not argue that the District Court abused its discretion in using the method for annualizing income set forth in Admin. R. M. 37.62.108(3)(b).

¶14 Chuck also suggests the District Court did not allow him all his reasonable expenses as deductions from his gross income. This suggestion has no merit. The District Court concluded that, even though many of Chuck's claimed expenses were undocumented, the only one it would not allow was a claim for payments for a truck Chuck was purchasing for his welding business. The District Court found, pursuant to Admin. R. M. 37.62.106(2)(b), that only straight-line depreciation is allowable as an expense for vehicles. Chuck offers nothing to refute this conclusion.

¶15 We hold Chuck has failed to establish error in the District Court's calculation of his income for child support purposes.

ISSUE 2

¶16 **Did the District Court err in awarding Erin primary residential custody of the parties' son?**

¶17 Each party proposed a parenting plan under which he or she would have custody of their son except for the last two weeks of every second month, during which time the other

5

parent would have custody. Erin's proposed plan also provided for a division of holiday time between the parents and for 8 weeks in the summer with each parent. Under Erin's proposed plan, when the child reaches school age, Chuck would be entitled to one weekend per month with their son instead of the last two weeks of every second month, as well as extended school breaks.

¶18 The District Court adopted Erin's proposed parenting plan, and Chuck appeals. He claims he should be the primary custodial parent based on evidence that Erin suffered from depression and was not a good housekeeper during their marriage. Chuck advances only § 40-4-212, MCA, as authority supporting his argument.

¶19 Section 40-4-212, MCA, provides that a court shall determine a parenting plan in accordance with the child's best interests and all relevant parenting factors, including the 13 factors specifically set forth in the statute. We have held that a court need not make specific findings relating to each § 40-4-212, MCA, parenting factor. *See Czapranski,* ¶ 11 (citations omitted).

¶20 Here, the District Court made several findings addressing the § 40-4-212, MCA, factors. It found both parents were in good physical health but that Erin had suffered from depression secondary to experiencing a miscarriage in September of 2005, as a result of which she was not always up to keeping a clean house during the marriage. The court also found that Erin had provided the majority of the care for their son during the marriage and that the son had extended family and a doctor in Oklahoma, and was integrated in the community in Drumright, Oklahoma. The court further found that, although both Chuck and

6

Erin could adequately parent, Erin would have more time to parent and more family support in Oklahoma. The court determined that the child's best interests were served by adopting the parenting plan under which he would reside with Erin the majority of the time.

¶21 The District Court's findings of fact are supported by substantial evidence and are not otherwise clearly erroneous. The award of primary residential custody to Erin does not represent a clear abuse of discretion. We hold Chuck has not established error in the court's award of primary residential custody to Erin.

ISSUE 3

¶22 **Did the District Court err in awarding Erin $500 a month as maintenance?**

¶23 The court stated Erin requested spousal maintenance to allow her to go to school for up to four years and Chuck objected on grounds that the marriage lasted only four years and "the standard of living during the marriage was not that great[.]" The court concluded Erin "does not earn a great income" with which to support herself or her child, but noted it was awarding her $960 per month in child support to go with her gross wages of $1,733 per month. The court characterized as "laudable" Erin's desire to obtain an education so she can earn a better living, and noted that, while Chuck had considerable debts and expenses "stemming from less lucrative times," some of those expenses should be short-lived. Ultimately, the court concluded "Erin needs and Chuck can afford to pay spousal maintenance in the amount of $500 per month for 36 months[.]"

¶24 On appeal, Chuck contends the purpose of the maintenance award was to punish him for not working harder during the marriage. In so doing, he quotes the District Court's

conclusion of law—which he misidentifies as a finding of fact—that "[t]he standard of living during the marriage was never what it could have been if Chuck would have stayed at a welding job instead of working with horses." Chuck contends the District Court unjustly criticized him. He advances no authority to support his argument that the maintenance award was improper, however, other than § 40-4-203, MCA.

¶25    Maintenance is proper if the district court finds that the spouse seeking maintenance:

> (a) lacks sufficient property to provide for [her] reasonable needs; and
>
> (b) is unable to support [her]self through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Section 40-4-203(1), MCA. Further, an award of maintenance "shall be in such amounts and for such periods of time as the court deems just, without regard for marital misconduct, and after considering all relevant facts." Section 40-4-203(2), MCA.

¶26    The District Court's findings and conclusions address the maintenance factors set forth in § 40-4-203(1), MCA. The court valued the portion of the marital estate distributed to Erin at $4,081.50—clearly, an amount insufficient to provide for her reasonable needs. The court concluded Erin "d[id] not earn a great income on which to support herself or her child" which, while not artfully stated, addresses the factor that Erin is unable to support herself through appropriate employment. Chuck has not established that the court abused its discretion. We hold Chuck has not established error in the District Court's award to Erin of $500 per month in maintenance for 36 months.

¶27    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

Justice Jim Rice, concurring in part and dissenting in part.

¶28    I concur with the Court in affirming the District Court's order requiring Chuck to pay $960 per month in child support, and in awarding Erin the primary physical custody of the parties' son (Issues 1 and 2). I dissent from Issue 3, and would reverse the District Court's award of maintenance in the amount of $500 per month for a period of three years.

¶29    Maintenance awards must consider the "duration of the marriage," § 40-4-203(2)(d), MCA, and here the duration was brief, only four years. Indeed, the three year maintenance award spans 75% of the marriage's duration. As for the "standard of living established during the marriage," § 40-4-203(2)(c), MCA, the District Court concluded that the standard of living for the marriage was not high, but then criticized Chuck for this, which I believe was error. The court concluded that the parties' standard of living could have been higher had Chuck "stayed at a welding job instead of working with horses," and explained that it was not until after the parties separated that Chuck "settled down into a more permanent and more financially lucrative employment." Then, though acknowledging that Chuck "retains

9

many debts and expenses stemming from less lucrative times" in the amount of $7,373 per month, the court premised the maintenance award upon Chuck's post-marriage standard of living, not upon the standard of living of the marriage. The higher income Chuck had started to earn after the marriage had existed for only six weeks at the time of trial.

¶30 As for "the age and the physical and emotional condition of the spouse seeking maintenance," § 40-4-204(2)(e), MCA, the court found that Erin was 24 years old and "in good physical health." Although noting that Erin was dealing with emotional "losses" of the marriage, the court awarded her custody of the parties' child and noted that she is earning $1,733 per month, to which Chuck's $960 monthly child support would be added. This income, in addition to constituting significant "financial resources of the party seeking maintenance" after a marriage with a lower standard of living, § 40-4-203(2)(a), MCA, also undermines the threshold determination that the spouse seeking maintenance must be "unable to support herself." Section 40-4-203(1)(b), MCA.

¶31 I believe the court committed error in the application of the statutory factors and that the award of maintenance was an abuse of discretion.

/S/ JIM RICE

10