

DA 09-0684

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 144

IN RE THE MARRIAGE OF

CHAD LAWRENCE TIPTON,

      Petitioner and Appellant,

  and

SHANNON CHRISTINE TIPTON,

      Respondent and Appellee.

APPEAL FROM:     District Court of the Second Judicial District,
                       In and For the County of Silver Bow, Cause No. DR 07-208
                       Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

             Brad Belke, Attorney at Law; Butte, Montana

             David L. Vicevich, Attorney at Law; Butte, Montana

      For Appellee:

             C. Kathleen McBride; Corette Pohlman & Kebe; Butte, Montana

                            Submitted on Briefs:  May 5, 2010

                                    Decided:  June 30, 2010

Filed:

            _____
                           Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Chad Lawrence Tipton appeals from the Findings of Fact, Conclusions of Law, and Decree entered by the Second Judicial District Court, Silver Bow County, dissolving the marriage between him and Shannon Christine Tipton. We affirm in part, reverse in part, and remand for proceedings.

¶2 Chad raises the following four issues:

¶3 *Did the District Court err in determining Shannon's income?*

¶4 *Did the District Court err by valuing the Tiptons' marital estate on March 31, 2008, instead of the date on which the dissolution became effective?*

¶5 *Did the District Court err in determining the monthly amount and duration of the maintenance award to Chad?*

¶6 *Did the District Court err by failing to enter a final child support order?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶7 Chad and Shannon married on July 2, 1994. Their marriage produced one child, born in 2003. In August of 2004, after living in various locations across the United States, Chad, Shannon, and their son moved to Butte. Chad had previously worked as a computer consultant, but he stayed at home with their son during the couple's residency in Butte. Shannon joined a Butte surgical practice and began work as a surgeon.

¶8 In October 2007, Chad filed for dissolution. The District Court conducted a bench trial on September 30 and October 1, 2009. Shannon testified that her annual income

2

from her surgical practice, as reflected on her 2008 W-2, was $237,000, and the District Court adopted this number as Shannon's approximate annual income.

¶9 Shannon's 2008 federal income tax return indicated that her adjusted gross annual income was $343,471. The disparity between Shannon's W-2 statement and her adjusted gross income resulted from the inclusion of additional incomes of $50,241 and $55,264 on her tax return.[1] Shannon explained at trial that she excluded the $50,241 from her income for purposes of the dissolution proceedings because it was not a distribution "given to [her] in a check or as income," but instead was "pass-through" income from her medical business for which she paid the taxes. Shannon explained that attributing this income personally to her was more advantageous because "it's better for [her] to pay taxes on it than for it to be a corporate tax." About the $55,264 income amount, Shannon explained it should not qualify as income for dissolution purposes because it appeared on her federal income tax return only because of a guaranteed salary and loan repayment program for which the tax consequences fell in 2008. According to Shannon, she received the salary and loan repayment benefits in 2004 and 2005 but is now paying the taxes owed on them.

¶10 Further testimony was elicited that Shannon and her business partner[2] made a determination during 2008 to pay down business debt in the amount of $250,000 in order

---

[1] There is an additional $966 difference between Shannon's 2008 federal adjusted gross income and her 2008 W-2 wage statement which is not accounted for by the parties, and we do not address it.

[2] In their testimony and briefing, the parties refer to Shannon's medical business by various general terms, such as "corporation" and "partnership." The particular nature of the business entity and its tax status are not issues resolved in this appeal.

to secure a new line of credit for the purpose of recruiting a third partner for the business. Shannon acknowledged in her testimony that "in theory" she and her partner could have taken these funds as personal distributions from the business, in the amount of $125,000 each, but that this would have been detrimental to the "long-term stability of [her] practice" and would have precluded the recruitment of a new partner to improve the business.

¶11 Based upon the work Chad began as a computer programmer and consultant for the Butte-Silver Bow local government after separating with Shannon, the District Court found his annual income was approximately $43,000. The court found the approximate value of the marital assets was $317,150. These assets included the financial interest in the medical practice and the building. The court valued the marital assets as of March 31, 2008, although the marriage itself was not dissolved until December 2, 2009. The District Court found the marital debts to be approximately $146,000. Chad appeals.

## STANDARD OF REVIEW

¶12 When reviewing a dissolution proceeding, we determine whether the district court's findings of fact were clearly erroneous. *In re Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, 124 P.3d 1151. "A finding is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence or our review of the record convinces us that the district court made a mistake." *In re Marriage of Crilly*, ¶ 10 (citing *Bock v. Smith*, 2005 MT 40, ¶ 14, 326 Mont. 123, 107 P.3d 488). "Absent clearly erroneous findings, we will affirm the district court

4

unless we identify an abuse of discretion." *In re Marriage of Williams*, 2009 MT 282, ¶ 14, 352 Mont. 198, 217 P.3d 67; *see also In re Marriage of Payer*, 2005 MT 89, ¶ 9, 326 Mont. 459, 110 P.3d 460; *In re Marriage of Thorner*, 2008 MT 270, ¶ 21, 345 Mont. 194, 190 P.3d 1063. "A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *In re Marriage of Crilly*, ¶ 10.[3]

## DISCUSSION

¶13 ***Did the District Court err in determining Shannon's income?***

¶14 The District Court found Shannon's income to be $237,000 as reported on her W-2 wage statement. Chad argues this finding was clearly erroneous because it excluded additional business profits and benefits, including the $50,241 and $55,264 amounts, as well as the $125,000 Shannon earned and was entitled to receive as a distribution, and that this error led to the District Court abusing its discretion in resolving the property, maintenance, and child support issues. Shannon responds that the District Court considered conflicting testimony and that substantial evidence supports the District Court's finding that her annual income was $237,000. In reply, Chad concedes that substantial evidence exists in the record to conclude that Shannon's annual income was

---

[3] Shannon filed a Motion to Strike Partial Transcript, arguing that Chad had only identified the transcript of the hearing conducted on September 30 and October 1, 2009, as necessary to the appeal, and thus requesting this Court strike the transcript of the March 24, 2008 hearing which Chad has attached to his brief. Because the March 24, 2008 transcript is of no consequence to the disposition of this case, we deem Shannon's motion moot. *See e.g. State v. Nelson*, 2008 MT 359, ¶ 15, 346 Mont. 366, 195 P.3d 826.

$237,000, but argues that the District Court misapprehended the effect of the evidence, made a mistake, or caused a substantial injustice.

¶15    In a dissolution proceeding, a district court must determine the income of the parties for purposes of distributing property, awarding maintenance, and setting child support. Section 40-4-202(1), MCA, provides that a district court must consider the "amount and sources of income" in apportioning marital property. Any maintenance award must be based upon a consideration of the financial needs of the party requesting maintenance and "the ability of the spouse from whom maintenance is sought" to provide maintenance. Section 40-4-203(2), MCA. Child support awards are based upon the Montana Child Support Guidelines, whose application is presumed to calculate an "adequate and reasonable support award" unless proven otherwise by clear and convincing evidence. Section 40-4-204, MCA; *In re Marriage of Kotecki*, 2000 MT 254, ¶ 20, 301 Mont. 460, 10 P.3d 828. The Guidelines define income as "actual income, imputed income, or any combination thereof which fairly reflects a parent's resources available for child support." Admin. R. M. 37.62.106(1). The Guidelines further define "actual income" to include:

> economic benefit from whatever source derived . . . and includes but is not limited to income from salaries, wages, tips, commissions, bonuses, earnings, *profits, dividends*, severance pay, pensions, periodic distributions from retirement plans, draws or advances against earnings, interest, trust income, annuities, royalties, alimony or spousal maintenance, social security benefits, veteran's benefits, workers' compensation benefits, unemployment benefits, disability payments, earned income credit and all other government payments and benefits.

Admin. R. M. 37.62.106(2)(a) (emphasis added). In determining a child support award "a district court must be realistic and take the actual situation of the parties into account when calculating child support obligations." *Albrecht v. Albrecht*, 2002 MT 227, ¶ 12, 311 Mont. 412, 56 P.3d 339 (citing *In re Marriage of Noel*, 265 Mont. 249, 252, 875 P.2d 358, 359 (1994)).

¶16    Courts have shown particular concern about a party's ability to shelter his or her income within a business entity. *See e.g. In re Marriage of McDonald*, 446 N.E.2d 559, 560-61 (Ill. App. 4th Dist. 1983) (requiring trial court to look beyond tax returns because "[i]t is a matter of common knowledge that income may be sheltered from taxation"); *Riepenhoff v. Riepenhoff*, 580 N.E.2d 846, 848 (Ohio App. 4th Dist. 1990) (holding an individual may not "use a closely held corporation as a dodge to shelter his income to avoid paying a higher amount of support or alimony"). We reached a similar conclusion on a child support issue in *In re Marriage of Gray*, explaining that "it is disposable income of the parent, and not their income tax returns alone, which must be considered by the Court." *In re Marriage of Gray*, 242 Mont. 69, 73, 788 P.2d 909, 912 (1990); *see also Albrecht*, ¶ 17.

¶17    In our recent decision of *In re Marriage of Williams*, ¶¶ 12, 31, husband Bobby was a principal in a closely held family corporation, B&J Properties, which used business income to pay down business debt instead of paying out income to Bobby and his father. The district court concluded that such debt payments did not constitute "income" and did not count them for child support purposes, reasoning instead that any future decision by

7

the corporation to pay out income could be addressed "with a corresponding increase in Bobby's child support obligation." *In re Marriage of Williams*, ¶ 33. However, this Court reversed, requiring the district court to consider the business income. *In re Marriage of Williams*, ¶ 33. Otherwise, Bobby and his father would be provided "with substantial incentive to spend B&J's income on anything other than dividends" and presented "a situation susceptible to substantial manipulation." *In re Marriage of Williams*, ¶ 33; *see also In re Marriage of Jacobson*, 251 Mont. 394, 398, 825 P.2d 561, 562 (1992) (recognizing that profits used to pay a partnership's debts still constitute an income producing asset).

¶18 Here, the District Court found that Shannon's income did not include the $50,241 designated as "pass-through" income or the $55,264 from the loan forgiveness and salary guarantee program, amounts included on her 2008 income tax returns. Contrary to Chad's argument, the listing of this additional $105,505 on Shannon's income tax return does not itself require that it be deemed income by the District Court in a dissolution proceeding. *See e.g. In re Marriage of Gray*, 242 Mont. at 75, 788 P.2d at 913 (tax returns useful but not dispositive). Shannon testified that she did not actually receive the $50,241 of "pass-through" income, but simply paid the taxes on it to gain a tax advantage. Similarly, Shannon received the benefit of the loan forgiveness and salary guarantee program during 2004 and 2005, and the $55,264 was the subsequent tax consequence which had to be recognized. Thus, we conclude that the District Court's

findings were not clearly erroneous regarding the exclusion of this $105,505 from Shannon's income.

¶19   We reach a different result, however, regarding the business income which Shannon and her business partner used to pay down their business debt. Shannon acknowledged in her testimony that "in theory" the business could have distributed the $250,000 to the partners individually, providing her with an additional distribution of $125,000. However, they instead kept the income within the business and paid down debt in preparation for expanding the business by adding a new partner. Thus, income earned by Shannon was essentially sheltered within the business and not considered in determining the dissolution issues dependent upon an assessment of income. The District Court's finding which excluded the additional $125,000 of income at Shannon's disposal was clearly erroneous, which led to an abuse of discretion. *See e.g. In re Marriage of Lewis*, 198 Mont. 51, 55, 643 P.2d 604, 606 (1982); *In re Marriage of Smith*, 191 Mont. 200, 203, 622 P.2d 1022, 1024 (1981).

¶20   We remand for a reconsideration of the dissolution issues in light of our determination regarding Shannon's income, including maintenance, child support, and the distribution of property. However, our determination does not mandate that Shannon's income be set at any specific figure on remand. The error in failing to consider the $125,000 income which was available to Shannon during one or more years does not necessarily require that her annual income be increased by that amount or require specific increases in maintenance or child support. We are likewise aware that

9

our holding may not change the value of the marital estate if the District Court previously considered the reduction of business debt when valuing the medical practice. Our decision simply requires the District Court to reassess Shannon's income in light of this correction in her income availability and redetermine the dissolution issues based thereon. It may not be necessary for the District Court to conduct further factfinding or other hearings, and we leave that to the District Court's sound discretion.

¶21 ***Did the District Court err in valuing the Tiptons' marital estate on March 31, 2008, instead of the date on which the dissolution became effective?***

¶22 Chad argues that the District Court erred in valuing the marital estate on March 31, 2008, instead of December 2, 2009, the date of dissolution. Shannon responds that the District Court's variance is "based on the unique circumstances of this case."

¶23 Generally, the value of the marital estate is ascertained at the time of dissolution. *In re Marriage of Swanson*, 220 Mont. 490, 495, 716 P.2d 219, 222 (1986) (citing *Vivian v. Vivian*, 178 Mont. 341, 344, 583 P.2d 1072, 1074 (1978)). However, we have recognized that unique circumstances will permit deviation from the general rule. *In re Marriage of Hochhalter*, 2001 MT 268, ¶ 17, 307 Mont. 261, 37 P.3d 665 (citing cases). In *In re Marriage of Thorner*, ¶ 37, the parties' relationship ended sometime between April and July 2004, "when they began managing their finances separately and eventually lived separately." We approved of the district court's use of this time instead of the time of dissolution, concluding that the court had properly exercised its discretion in using the date of the parties' financial separation. *In re Marriage of Thorner*, ¶ 37.

10

¶24    Here, the District Court found the date of March 31, 2008, significant because the parties were no longer living in the same household or commingling their assets by that time. We conclude the District Court did not abuse its discretion in determining to value the estate as of March 31, 2008.

¶25    Because we reverse and remand for the District Court to reconsider its distribution of property, maintenance, and child support, we need not address the remaining issues Chad raises.

¶26    Reversed and remanded for further proceedings consistent with this opinion.


/S/ JIM RICE


We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON