DA 10-0334

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 41

IN RE THE MARRIAGE OF:

MOLLY A. FRICK,

      Petitioner, Appellee and Cross-Appellant,

  and

SCOTT E. PERINA,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDR 09-0378
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Antonia P. Marra; Marra, Sexe, Evenson & Bell, P.C.; Great Falls,
Montana

      For Appellee:

            Carl B. Jensen, Jr., Attorney at Law; Great Falls, Montana

Submitted on Briefs:  February 1, 2011

Decided:  March 8, 2011

Filed:

_____

Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Respondent Scott E. Perina (Perina) appeals from the child support order of the Eighth Judicial District Court of Cascade County.  Petitioner Molly A. Frick (Frick) cross-appeals.  We affirm.

¶2     We consider the following issues on appeal:

¶3     *1.   Whether the District Court erred in the amount of income it imputed to Perina.*

¶4     *2.  Whether the District Court erred by allowing insufficient travel expenses.*

¶5     *3.   Whether the District Court erred in failing to comply with Admin. R. M. 37.62.130 absent findings stating the reason for deviation from the rule.*

¶6     We consider the following issues on cross-appeal:

¶7     *4.   Whether the District Court erred in finding that Frick had no medical insurance costs or uncovered medical expenses.*

¶8     *5.  Whether the District Court erred in not awarding retroactive child support.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶9     Frick and Perina were married on February 26, 2008, in Las Vegas, Nevada. Perina, an Australian citizen, was working temporarily as a "custom cutter" in the United States at the time.  The parties moved to Australia to live and work on a farm owned by Perina's family corporation.  After six months in Australia, Frick returned to the United States to settle outstanding immigration paperwork.  The District Court found that Perina gave Frick $2,000 upon her departure to the United States.  Frick did not return to Australia and later filed a petition for dissolution of marriage.  Perina returned to work as a temporary employee at the coal mine in which he had previously been employed.  Frick

2

withdrew $916 from the parties' joint bank account in the United States, and withdrew approximately $2,200 from an account held jointly by her father and Perina. The parties dispute the source of the money in these accounts.

¶10 The parties' daughter, S.P.-F., was born in Great Falls, Montana, in late December 2008, and has lived with her mother since that time. The parties successfully mediated an agreement on a parenting plan and division of property. The sole issue remaining in dispute was the amount of child support. The District Court conducted a trial on that issue on April 21, 2010.

¶11 Frick testified that she expects to maintain her current employment at $11.67 per hour. She reduced her work schedule to 36 hours per week after working full-time made her monthly income $48 too high to maintain eligibility for Medicaid and day-care assistance for S.P.-F., which she otherwise would be unable to afford. Frick also contended that were she to receive child support, her income again would rise above the maximum allowable amount for Medicaid eligibility. Once she lost Medicaid, Frick testified that she would need to purchase insurance through her employer, at a cost of approximately $400 per month with a $5,000 deductible.

¶12 There was considerable disagreement over the proper measurement of Perina's income given his irregular employment with the coal mine. Perina was employed as a full-time mine employee in 2007, as a part-time mine employee in 2009, and as a laborer on the family farm in 2008, and had widely disparate annual incomes as a result. Perina testified that he will not be permitted to maintain full-time employment when spending sixty days per year in the United States in order to exercise his visitation rights. His

3

employer will allow him to remain only as an "as needed" part-time employee, filling in when open shifts are available. Perina believed he would be able to obtain approximately twenty-four hours of work per week under this arrangement, at an hourly wage of $41.44. Based on these figures, he submitted a proposed annual income of $43,871.

¶13 Perina argued that the amount he would be forced to spend on living expenses while exercising his visitation rights also should be taken into account in calculating child support. He estimated the annual costs of such expenses, including hotel and rental car, at $10,000 to $14,000. Frick disputed Perina's proposed income, chiefly on the ground that Perina's 2009 income already reflected "as needed" employment status and nonetheless exceeded $90,000. She also argued that Perina's interest in the valuable farm owned by his family's corporation, and resulting rent-free lodging, should be taken into account.

¶14 On April 28, the District Court issued its Findings of Fact, Conclusions of Law and Decree of Dissolution. The court found that Frick's earnings amounted to $21,846 per year, that she would incur daycare expenses of approximately $4,000 per year, and that she had no medical insurance costs or uncovered medical expenses. After determining that Perina's average salary during his two years at the mine was $75,242, the court found an appropriate annual income for Perina to be $62,702, noting that he would be working a reduced schedule, but that his status as an "as-needed" part-time employee would be unchanged from 2009. The court also found a long distance parenting adjustment appropriate in the amount of $4,000.

4

¶15 Pursuant to the court's instructions, each party submitted proposed child support calculations in light of the court's findings. The parties disagreed on the appropriate amount of travel-related expenses allowed as an adjustment. Frick's proposals incorporated the District Court's finding of $4,000, based on the cost of two round-trip plane tickets from Brisbane, Australia, to Great Falls, Montana. Perina's proposed worksheet, however, included a proposed adjustment of $21,326. Perina arrived at this figure by multiplying mileage in excess of 2,000 miles by the current IRS business mileage rate as per his interpretation of Admin R. M. 37.62.130, which governs long distance parenting adjustments to child support awards. His total distance traveled was 9,431 miles in each direction; this figure multiplied by four (for two round trips) and applied to the IRS business mileage rate of .495 dollars per mile is $18,296. Perina's proposed adjustment reflects an additional $4,000 for the plane tickets, and subtraction of the standard expense of $970 (measured by multiplying the IRS business mileage rate by 2,000). Frick objected to Perina's calculation on the ground that the rule only allows compensation at the standard rate for miles *driven*, not total miles traveled. Frick observed that miles traveled by means other than automobile are already accounted for in subsection (3)(b) of the rule. Admin. R. M. 37.62.130.

¶16 The District Court issued an *Order re Child Support* on May 28, 2010. The court awarded $728 per month in support, based on the income it had previously attributed to each party and a long distance parenting adjustment of $4,000. It did not include any amount for medical expenses or retroactive support. A *Notice of Entry of Judgment* was filed on June 10, 2010. Perina timely appealed, and Frick cross-appealed.

**STANDARD OF REVIEW**

¶17 We review a district court's findings of fact in a dissolution proceeding to determine whether the findings are clearly erroneous. *In re Marriage of Tipton*, 2010 MT 144, ¶ 12, 357 Mont. 1, 239 P.3d 116. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *Id.* (internal citation and quotation marks omitted). Absent clearly erroneous findings, we will affirm the district court unless we identify an abuse of discretion. *In re Marriage of Williams*, 2009 MT 282, ¶ 14, 352 Mont. 198, 217 P.3d 67. We review a district court's conclusions of law to determine whether those conclusions are correct. *In re Marriage of Bartsch*, 2007 MT 136, ¶ 9, 337 Mont. 386, 162 P.3d 72.

**DISCUSSION**

¶18 *1. Whether the District Court erred in the amount of income it imputed to Perina.*

¶19 Perina argues that the District Court erred in its calculation of his income. Specifically, Perina contends that the court erred by using the "income averaging" method to arrive at its conclusion, because the testimony presented showed that he would not make more than $43,871 and because the income used in the calculation reflected a different work environment than the one he would face in the future. The $62,702 figure settled on by the court, Perina argues, does not take into account the reality of the situation—that he will be unable to earn this income as a part-time employee, absent from work 60 days each year in order to visit S.P.-F.

¶20 Frick responds that the $62,702 figure accurately reflects Perina's income. She observes that his average income—adjusted for the exchange rate—actually was $75,242, and thus the lower figure arrived at by the court already takes into account both Perina's status as a part-time rather than full-time employee and the costs associated with visitation. Frick also reiterates other arguments she made before the District Court, such as that Perina's partial ownership of a valuable family farm and rent-free living arrangement should be taken into account. Due to these factors, Frick maintains, Perina has a higher amount of disposable income than others with similar total income.

¶21 In determining child support obligations, a district court must follow the Montana Child Support Guidelines (the "Guidelines") unless clear and convincing evidence demonstrates that their application is unjust or inappropriate in that particular case. Section 40-4-204(3)(a), MCA; *Albrecht v. Albrecht*, 2002 MT 227, ¶ 11, 311 Mont. 412, 56 P.3d 339. Admin. R. M. 37.62.108(3) provides that, to the extent possible, income for child support shall be annualized using one of two methods. The first method allows "seasonal employment or fluctuating income [to] be averaged over a period sufficient to accurately reflect the parent's earning ability." Admin. R. M. 37.62.108(3)(a). We have recommended consideration of at least two tax years in this determination. *Albrecht*, ¶ 12.

¶22 Perina recognizes that the averaging of prior years' income, as the District Court did in this case, is a valid method of determining income available for child support. He observes, however, that we have emphasized the Guidelines are a starting point, while noting the amount awarded must take the "actual situation of the parties into account."

7

*In re Tipton*, ¶ 15. Citing *Graham v. Graham*, 2008 MT 435, ¶ 12, 347 Mont. 483, 199 P.3d 211, Perina argues the evidence at trial clearly demonstrated that averaging his annual income from previous years was unjust to him and S.P.-F. He contends the trial court imputed far more income than he could be expected to make, given his inability to secure consistent employment with the mine as a result of his visitation periods, his need to forgo two months' income each year during visitation, and the expected dissimilarity of future years with 2009 despite his status as an "as needed" employee during that year. He characterizes the trial court's imputed income as assuming a "full time income," which he cannot earn.

¶23 We cannot agree that the District Court abused its discretion. Perina's work situation and employment history presented a difficult question. The parties presented evidence painting dramatically differing pictures of Perina's financial resources. As we have repeatedly held, a district court sits in the best position to judge the credibility of testimony and proffered evidence, and this Court defers to the district court's resolution of conflicting evidence. *In re Marriage of Haberkern*, 2004 MT 29, ¶ 34, 319 Mont. 393, 85 P.3d 743. The District Court examined Perina's annual income returns, noted that his 2009 income reflected a similar employment situation to what he can expect in the future (and actually exceeded his income when he was a full-time employee at the mine in 2007, given the higher hourly rates that temporary labor commands), and averaged those annualized incomes as provided for in Admin. R. M. 37.62.108(3)(a). It then proceeded to reduce that amount by over $12,000, presumably to account for Perina's added time away from work to travel to the United States. Perina has not established that these

8

findings were clearly erroneous. Substantial credible evidence supports the court's findings. We affirm the District Court's determination as to the amount of Perina's income available for child support purposes.

¶24   *2. Whether the District Court erred by allowing insufficient travel expenses.*

¶25   Perina's next assertion of error relates to the expenses he will incur while exercising his visitation rights. Perina again argues that the District Court erred by not taking into account the true situation of the parties and by allowing an amount which is unjust and/or inappropriate given the facts of the case. Perina sought a "dollar-for-dollar" offset for the amounts he would expend to exercise his visitation rights. The true cost of each visit, he testified, would amount to between $5,000 and $7,000, for an annual total of $10,000 to $14,000. Perina asserts that a situation such as his, where one parent lives on an entirely different continent, is not envisioned by the Guidelines and clearly demonstrates that allowance of transportation expenses alone would be unjust. He maintains he will not be able to visit S.P.-F. without a larger amount allowed as a travel offset and her needs will not be met if he is unable to exercise his parenting time.

¶26   Perina apparently seeks an increased long distance parenting adjustment under Admin. R. M. 37.62.130, or reduction of the amount of income available for child support through a variance as provided for in Admin. R. M. 37.62.102(2). Perina describes the remedy as a "travel offset" or "travel variance."

¶27   Frick points out that Admin. R. M. 37.62.130(4) specifically limits the long distance parenting adjustment to "costs of transportation," and does not include "meals, lodging, or other costs." She argues that the District Court already accounted for these

9

expenses in reducing Perina's imputed annual income. Frick contends Perina's claim that he will not be able to exercise his parenting time without a larger travel adjustment is not supported by the evidence.

¶28 We conclude that Perina has not demonstrated error in the District Court's long distance parenting adjustment. Conflicting evidence as to the necessity of a travel variance was placed before the District Court, and that court accounted for Perina's extra time away from work by imputing a reduced annual income. While Perina presented evidence that an adjustment in excess of that prescribed by the Guidelines was necessary to avoid an unjust result, his theory was disputed by Frick. We will not substitute our judgment for that of the trial court in the resolution of conflicting evidence. *Haberkern*, ¶ 34. A district court must follow the Guidelines absent clear and convincing evidence demonstrating that their application would be unjust or inappropriate. *Albrecht*, ¶ 11; *Graham*, ¶ 12. We cannot conclude that the District Court abused its discretion in failing to find clear and convincing evidence requiring a departure from the expenses prescribed by the Guidelines. The District Court's findings are supported by substantial evidence.

¶29 ***3. Whether the District Court erred in failing to comply with Admin. R. M. 37.62.130 absent findings stating the reason for deviation from the rule.***

¶30 Perina objects to the District Court's application of Admin. R. M. 37.62.130, arguing that the record does not reflect the District Court made the calculations required by the rule. The rule states as follows:

> 37.62.130 LONG DISTANCE PARENTING ADJUSTMENT
>
> (1) Long distance parenting is any travel by a parent or child to attain the goals of the parenting plan. A long distance parenting adjustment is

10

allowed when travel by a parent or child exceeds 2,000 miles in a calendar year.

(2) The amount of income available for SOLA [Standard of Living Adjustment] is reduced to the extent the actual annual expense of transportation for long distance parenting exceeds 2,000 miles multiplied by the current IRS business mileage rate (standard expense). The reduction is determined separately for each parent.

(3) The reduction is calculated as follows:

(a) multiply the parent's annual mileage driven to exercise long-distance parenting by the current IRS business mileage rate;

(b) add the annual cost of transportation by means other than automobile;

(c) subtract the standard expense from the total of (3) (a) and (b) above; and

(d) subtract any difference greater than zero from the parent's income available for SOLA.

(4) Expenses are limited to costs of transportation and do not include meals, lodging, or other costs.

(5) A long distance parenting adjustment may not reduce income available for SOLA below zero.

¶31 Perina's chief objection to the calculation is that it includes *only* the amount provided for under subsection (3)(b)—the "annual cost of transportation by means other than automobile." The record does not reflect any additional calculations, such as for the "parent's annual mileage driven" under subsection (3)(a), or for subtraction of the standard expense under subsection (3)(c). Perina asserts the District Court failed to make sufficient findings to be able to determine whether the court misapplied the rule or ignored it entirely. While a District Court may permissibly deviate from the Guidelines

11

on a finding that the Guideline amount is unjust or inappropriate in a particular case, it must state its reasons for the record. Section 40-4-204(3)(b), MCA.

¶32 Frick responds that Perina's own submitted calculations under the Guidelines are incorrect. Perina submitted a total under subsection (3)(a) that was calculated using total miles *traveled*: some 9,400 miles for each leg of the trip. Frick correctly points out that the mileage allowed under subsection (3)(a) is limited to miles *driven*, and that miles traveled in any other manner—for example, miles flown—are accounted for via the "cost of transportation by means other than automobile" under subsection (3)(b). Frick further argues that this Court should not consider Perina's argument because it was raised for the first time on appeal. Frick states that Perina submitted no evidence to the District Court of any miles actually driven, such as between his farm and the airport in Brisbane from which he flew to Great Falls.

¶33 We agree with Frick that Perina failed to submit evidence of any miles actually driven, and thus there is insufficient evidence in the record to support a conclusion that the District Court's findings are clearly erroneous. While the District Court, following Admin R. M. 37.62.130, should have included in its calculation any mileage actually driven by Perina to exercise his parenting right, no evidence was submitted that would have enabled the court to make such a calculation. Furthermore, Perina's argument misreads the rule by calculating the adjustment using total miles *traveled* rather than total miles *driven*. Even if the actual miles driven had been included in the calculation, the evidence does not appear to support a higher allowance. The distance between Jondaryon, where Perina lives, and Brisbane, where the international airport is located, is

12

roughly 100 miles. Had the calculation included this 400 total miles driven, it would have been more than offset by subtraction of the standard expense from the total in accordance with Admin. R. M. 37.62.130(3)(c). Thus, Perina was not prejudiced by any error in the District Court's calculation.

¶34 We affirm the District Court's long distance parenting adjustment. We now turn to consideration of the issues presented by Frick on cross-appeal.

¶35 ***4. Whether the District Court erred in finding that Frick had no medical insurance costs or uncovered medical expenses.***

¶36 Frick contends the District Court erred in finding she had no medical insurance costs or uncovered medical expenses. Although the court did not set out the specific basis for its finding, it is clear from the record that S.P.-F. was covered by Medicaid at the time of the hearing and that no other medical costs had been incurred by either party. Frick argues the District Court erroneously ignored her testimony that she will no longer be eligible for Medicaid as soon as she begins receiving child support, and that insurance through her employer will cost her nearly $400 per month. She also contends the District Court erred by taking into account S.P.-F.'s eligibility for Medicaid in the first place, as § 40-5-805(2), MCA, instructs courts not to consider "a child's eligibility for a public assistance program as a factor in determining a parent's financial ability to afford individual insurance or a health benefit plan" when establishing a medical support order. She urges this Court to remand the matter to the District Court for new findings relating to the child's future medical care.

¶37 Perina responds that Frick's testimony amounts to speculation. He claims Frick has never provided medical coverage and provided no concrete evidence that S.P.-F. will not be eligible for government assistance in the future, as she has been in the past. Nor has she provided evidence of any other medical costs.

¶38 We conclude that, based on the facts known and presented at the time of trial, the District Court did not err by failing to include the cost of medical insurance in the child support calculations. While the stipulated parenting plan provided that Frick would be responsible for S.P.-F.'s medical insurance—through Medicaid, CHIP, or her employer—at the time of trial no actual expenses had been incurred.

¶39 Petitioner's Trial Exhibit 1 claimed health insurance premiums in the amount of $6,000, together with extraordinary medical expenses of $2,400. Frick testified on direct examination that insurance through her employer would exceed $400 per month. On cross-examination, Frick testified that S.P.-F. was "grandfathered" in Medicaid for a year. Perina's counsel noted that Frick's financial affidavit stated the monthly cost of insurance for S.P.-F. through her current employer would be $342.86, and Frick responded that she thought it would be approximately $400, "minus [three dollars]." Upon questioning by the court, Frick's counsel stated he had "overestimated" medical costs in his child support worksheet and that the amount should be $4,000.

¶40 In calculating the primary child support allowance, Admin. R. M. 37.62.123(1)(b) states that "only those amounts which reflect the actual costs of covering the children" are to be included in the supplement to the primary allowance. Pursuant to subsection (3) of that rule, "once a court determines that each parent is responsible for any portion" of

14

"supplemental needs" such as health insurance costs, "it is required to credit each parent for those costs accordingly." *In re Marriage of Martinich-Buhl*, 2002 MT 224, ¶ 20, 311 Mont. 375, 56 P.3d 317. Where the record, however, fails to show that actual insurance costs are being paid by the parent, the district court does not abuse its discretion by failing to apply credit for such costs. *In re Marriage of Hogstad*, 275 Mont. 489, 500, 914 P.2d 584, 591 (1996).

¶41 In this case, the evidence is unclear regarding the effect on S.P.-F.'s current health coverage of child support payments that have not yet commenced, the actual cost of insurance coverage that Frick has not yet begun paying, or the date on which Frick may be required to begin paying for coverage. Additionally, it is somewhat unclear whether the various insurance costs to which Frick testified include coverage for *both* Frick and S.P.-F., or S.P.-F. alone. Frick's testimony that she hopes to return to school adds to the uncertainty, as her employment and insurance prospects could change if that occurs. Without evidence of "the actual costs" of coverage, the District Court did not err in failing to include such costs in the supplement to the primary allowance. If and when Frick obtains health insurance coverage at her expense, she may seek modification of the support order pursuant to § 40-4-208, MCA, based on the actual costs of coverage.

¶42 *5. Whether the District Court erred in not awarding retroactive child support.*

¶43 Frick claims the District Court abused its discretion in not awarding retroactive child support. She bases this claim on Perina's alleged lack of involvement and financial support during the first eighteen months of S.P.-F.'s life. Frick contends she has been forced to forgo offered promotions at work in order to qualify for government-sponsored

health insurance as a result of Perina's failure to support S.P.-F. Perina responds that conflicting evidence on the amount of past support was presented at trial and that it was within the District Court's discretion not to award retroactive support. He points to several sources of past support allegedly provided by him to Frick and S.P.-F., including the funds in several bank accounts and $2,000 on her initial departure from Australia.

¶44 The District Court found that given the disputed amount of past support and the substantial costs Perina incurred to travel to the United States to respond to the petition, it would be inequitable to award retroactive support. We will not disturb a district court's decision regarding retroactive child support without a clear abuse of discretion resulting in substantial prejudice. *In re Marriage of Franks*, 275 Mont. 66, 71, 909 P.2d 712, 715 (1996). Applying this standard, we cannot find reversible error in the District Court's determination not to award retroactive child support. It is plain from the record that both parties experienced significant financial hardship as a result of their separation, as is the unfortunate but common result of dissolution.

¶45 The judgment of the District Court is affirmed.


/S/ BETH BAKER

We concur:


/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS


16