
DA 13-0460

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 111

IN RE THE MARRIAGE OF:

CHAD W. ANDERSON,

        Petitioner and Appellant,

  v.

KAREN ANN ANDERSON,

        Respondent and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District, In and For the County of Lewis and Clark, Cause No. BDR-09-160 Honorable Jeffrey M. Sherlock, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

            Suzanne C. Marshall, Marshall Law Firm, P.C., Bozeman, Montana

        For Appellee:

            Colette B. Davies, Davies Law, PLLC, Billings, Montana

            Katharine Donnelly, Attorney at Law, Helena, Montana

                    Submitted on Briefs:  April 9, 2014
                                  Decided:  April 29, 2014

Filed:

_____

                Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    Chad W. Anderson (Chad) appeals from the findings of fact, conclusions of law, decree of dissolution, and parenting plan of the Montana First Judicial District Court, Lewis and Clark County, in his divorce from Karen Ann Anderson (Karen Ann).  We affirm.

## ISSUES

¶2    We address the following issues:

*1.  Did the District Court err in calculating the child support Chad owed based on his average income over the previous three years?*

*2.  Did the District Court properly consider the testimony of the children's treating counselor as part of its determination of their best interests?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    Chad and Karen Ann were married on May 25, 2003 and separated on or about September 14, 2009.  They have four children:  J.A., age 10; A.A., age 7; O.A., age 5; and Z.A., age 4.  Chad has been absent from the children's life since he and Karen Ann separated and the younger two children do not remember him.  Karen Ann testified that Chad abused her and the children before the separation.

¶4    Shortly after the separation, Karen Ann obtained a Temporary Order of Protection and fled the family residence to stay at the Friendship Center with the children.  The court entered the one-year Order of Protection on May 21, 2009.  The order contemplated that Chad would have two supervised visits with the children, with the potential for future unsupervised visits if those visits were completed.  Chad never completed the supervised visits.  He has not seen the children since the Order of Protection was issued, in 2009.  In that time, he has made only one, unsuccessful, effort to visit with the children.

¶5     As part of that attempt, Chad moved to modify the Order of Protection.  The court scheduled a hearing on the matter, but Chad could not attend.  Several months later Chad, through his attorney, filed a Petition for Dissolution of Marriage in which he requested that the court impose a parenting plan granting him primary residential custody of the children. Karen Ann, also acting through an attorney, answered, proposing an alternative parenting plan that granted her primary custody of the children with supervised visitation for Chad. The matter was set for a one-day trial.  Prior to trial, each party was ordered to submit financial affidavits, a proposed parenting plan, and proposed findings of fact and conclusions of law.  Trial was held on May 8, 2013.  Both parties were present with their respective attorneys, and testified.  Each party called witnesses, who also testified.

¶6     Michael Petaja (Petaja), who is counseling J.A. and A.A., was one of the witnesses who testified at trial.  He testified that J.A. suffers from severe anxiety and post-traumatic stress disorder.  J.A. would like to re-establish contact with Chad, but fears reunification and unsupervised visits.  A.A. also fears reunification.  Petaja testified that Karen Ann provides a safe base for the children; and that any efforts at reunification with Chad should be supervised, and gradual.  Chad objected to Petaja's testimony about the children's wishes.

¶7     Following the trial, the District Court entered the findings of fact, conclusions of law, decree of dissolution and parenting plan from which Chad now appeals.

¶8     At the time of the District Court's order, Chad lived in Louisiana, with his parents. He was unemployed.  In 2010, he earned $56,000.  In 2011, he earned $55,000.  In 2012, he earned approximately $14,600, having voluntarily left his previous employment.  Chad testified that although he did not have a job, he believed he should be able to get one due to

3

his past work history. The children had never lived with Chad. Chad had not paid child support for the children since 2009, although he continued making mortgage payments on the family home until August, 2010. Chad had also been claiming the children as exemptions/deductions on his state and federal tax returns, and had claimed the child tax credit. In claiming that credit, Chad made false representations to the Internal Revenue Service that the children lived with him for at least twelve months.

¶9 Karen Ann was also unemployed at the time of the court's order. She was receiving social security income in the amount of $92 a month for each child, as well as disability benefits of $820 a month and $630 in food stamps. Due to a childhood brain tumor, Karen Ann suffers from problems with short-term memory as well as other issues. She also has suffered from seizures—although, with medication, she has not had a seizure in twelve years. The District Court found that with help from her parents, counselors, and community resources, Karen Ann had proven herself to be a capable parent. In making this finding, the District Court relied on testimony from a counselor who had worked with Karen Ann and the children.

¶10 Based on its findings of fact, the District Court ordered Chad to pay $1,190 per month in child support made retroactive to January 1, 2011. That calculation was based on an average of Chad's income for the previous three years. The court also found that it was in the children's best interests to remain in their mother's custody—based primarily on the fact that the children had not seen Chad since 2009.

**STANDARD OF REVIEW**

4

¶11 We review a district court's factual findings pertaining to a parenting plan to determine if they are clearly erroneous. *In re Marriage of Tummarello*, 2012 MT 18, ¶ 21, 363 Mont. 387, 270 P.3d 28. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the evidence convinces us that the district court made a mistake. *In re Marriage of Tummarello*, ¶ 21. Where we do not find the district court's findings clearly erroneous, we will reverse only if the district court abused its discretion. *In re Marriage of Tummarello*, ¶ 21. We will not overturn a district court's child support award absent an abuse of discretion. *In re Marriage of Tummarello*, ¶ 21. We also review a district court's evidentiary rulings for an abuse of discretion. *In re O.A.W.*, 2007 MT 13, ¶ 32, 335 Mont. 304, 153 P.3d 6. A district court abuses its discretion where it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in a substantial injustice. *In re Marriage of Tummarello*, ¶ 21.

## DISCUSSION

¶12 *1. Did the District Court err in calculating the child support Chad owed based on his average income over the previous three years?*

¶13 The factors a court must consider in ordering child support are set forth in § 40-4-204, MCA, as well as in the Child Support Guidelines, Admin. R. M. 37.62.101-37.62.148 (2012). Section 40-4-204(2), MCA, sets forth the following relevant factors to a child support award:

(a) the financial resources of the child;
(b) the financial resources of the parents;
(c) the standard of living that the child would have enjoyed had the marriage not been dissolved;

5

(d) the physical and emotional condition of the child and the child's educational and medical needs;

(e) the age of the child;

(f) the cost of day care for the child;

(g) any parenting plan that is ordered or decided upon; and

(h) the needs of any person, other than the child, whom either parent is legally obligated to support.

The Child Support Guidelines provide that a parent's income for child support calculations includes actual income, imputed income, or any combination thereof. Admin. R. M. 37.62.105(1). Income does not include lump sum social security payments or social security benefits received by a child or on behalf of a child as the result of a parent's disability. Admin. R. M. 37.62.105(4). Imputed income is attributed to a parent based on the provisions of Admin. R. M. 37.62.106. Those provisions provide that it is appropriate to impute income to a parent when the parent is unemployed or underemployed, with certain exceptions, set forth in the rule. Admin. R. M. 37.62.106(2). The Child Support Guidelines also provide that:

> To the extent possible, income for child support and expenses should be annualized to avoid the possibility of skewed application of the guidelines based on temporary or seasonal conditions . . . [F]luctuating income may be averaged over a period sufficient to accurately reflect the parent's earning ability.

Admin. R. M. 37.62.108(3).

¶14 Interpreting this framework, this Court "has recommended consideration of at least two years of income taxes when a district court is determining gross income." *Albrecht v. Albrecht*, 2002 MT 227, ¶ 12, 311 Mont. 412, 56 P.3d 339. We have generally approved the use of "income averaging" in child support determinations. *See In re Marriage of Frick*, 2011 MT 41, 359 Mont. 296, 249 P.3d 67. "The end sought is equity and accuracy in

6

determining income of the party charged with child support obligations, while serving the best interests of the child." *Albrecht*, ¶ 12.

¶15 Chad argues that the District Court erred by failing to consider Karen Ann's social security benefits as resources available to the children; and by calculating his income for child support purposes based on his average income over the previous three years. The law, however, is clear that that social security disability benefits should not be considered as "income" in these determinations and that income averaging is an acceptable method of determining income for the purposes of child support payment calculations. Admin. R. M. 37.62.105(4) (social security disability benefits should not be considered income); 37.62.108(3) (fluctuating income may be averaged); *see also Albrecht*, *In re Marriage of Frick*. The District Court determined to calculate Chad's income for child support using the averaging method, in part, based on Chad's own representations to the court about his earning potential and likelihood of finding employment in his field. The record supports the reasoned basis the District Court set forth for its child support calculation. The District Court did not abuse its discretion in determining the amount for Chad's child support payment.

¶16 *2. Did the District Court properly consider the testimony of the children's treating counselor as part of its determination of their best interests?*

¶17 Section 40-4-212(1), MCA, provides that a court must determine the parenting plan "in accordance with the best interest of the child[ren]." Factors the statute lists as relevant to the court's determination include the following:

> (a) the wishes of the child's parent or parents;
> (b) the wishes of the child;

7

(c) the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interest;
(d) the child's adjustment to home, school, and community;
(e) the mental and physical health of all individuals involved;
(f) physical abuse or threat of physical abuse by one parent against the other parent or the child;

. . .

(h) continuity and stability of care;
(i) developmental needs of the child;

. . .

(k) whether a parent has knowingly failed to financially support a child that the parent is able to support, which is considered to be not in the child's best interests;
(l) whether the child has frequent and continuing contact with both parents, which is considered to be in the child's best interests unless the court determines, after a hearing, that contact with a parent would be detrimental to the child's best interests. In making that determination, the court shall consider evidence of physical abuse or threat of physical abuse by one parent against the other parent or the child . . . .

Section 40-4-212(1), MCA. To determine the child's wishes with regards to the parenting plan, § 40-4-214, MCA, permits the court to interview the child in chambers or to seek advice of professional personnel. The statute does not require the court to interview the children directly. *In re Marriage of Bukacek*, 274 Mont. 98, 105, 907 P.2d 931, 935 (1995). It permits a court to instead rely on the evaluation of a professional counselor. *In re Marriage of Bukacek*, 274 Mont. at 105, 907 P.2d at 935. This Court has explained that § 40-4-214, MCA, is a statutory exception to the rule prohibiting hearsay. *In re Marriage of Drake*, 2002 MT 127, ¶¶ 16-18, 310 Mont. 114, 49 P.3d 38 (citing M. R. Evid. 802).

¶18 Chad argues that the District Court relied too heavily on § 40-4-212(1)(l), MCA, in reaching its custody determination and that Petaja's testimony about "what the children may or may not remember from their last contact with their father" was instrumental to this

8

determination. It appears that Chad is referring to the allegations that he abused the two older children.

¶19 To the extent the District Court relied on § 40-4-212(1)(l), MCA, however, it did so because the court found decisive the fact that "Chad has not seen his children for four years." The court specifically found that "at this point, whether the abuse occurred is irrelevant." It also noted that "[t]he two younger children would not recognize [Chad], and the older children have a fear of reunification." The latter finding, apparently derived from Petaja's testimony, makes no reference to the source of the children's fear, but rather, relates to their wishes regarding custody. This is a permissible use for the evaluation of a professional counselor, pursuant to § 40-4-214, MCA. The District Court did not abuse its discretion in considering Petaja's testimony to determine the children's wishes regarding custody.

## CONCLUSION

¶20 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON

9