FILED

March 29 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0556

DA 15-0556

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 74N

IN RE THE MARRIAGE OF:

KAYLEEN M. WALL, n/k/a NOLAND,

Petitioner and Appellee,

v.

JOHN E. WALL,

Respondent and Appellant.

APPEAL FROM:     District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DR-14-32
Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Matthew H. O'Neill, O'Neill Law Office, PLLC, Polson, Montana

For Appellee:

Lucy Hansen, Judnich Law Office, Missoula, Montana

Submitted on Briefs:  March 2, 2016

Decided:  March 29, 2016

Filed:

Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 John E. Wall (John) appeals from two orders, entitled Findings of Facts, Conclusions of Law, and Final Decree (Final Decree) and Final Parenting Plan, entered by the Twentieth Judicial District Court, Lake County. We affirm in part and reverse in part.

¶3 On September 7, 2013, John married Kayleen M. Wall (Kayleen). Kayleen had two children prior to the parties' marriage. On February 27, 2014, Kayleen obtained an Order of Protection against John from the Tribal Court of the Confederated Salish and Kootenai Tribes that prohibited John from having any contact with her or her children. The Order of Protection was later made permanent. On March 7, 2014, Kayleen filed for dissolution. In June 2014, John and Kayleen's son, D.J.W., was born. Following a hearing on the parties' dissolution and parenting plan, the District Court issued its Final Decree and Final Parenting Plan on August 11, 2015. John appeals.

¶4 John raises five issues on appeal. He first claims that the District Court erred in allowing John's ex-wife, Dawn Burnham (Burnham), to testify. John argues Burnham's testimony was inadmissible because portions constituted hearsay or were both hearsay and irrelevant. Relevant evidence is generally admissible unless "its probative value is

2

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M. R. Evid. 402; 403. Evidence is relevant if it has "any tendency" to make the existence of any fact more probable or less probable than it would be without the evidence. M. R. Evid. 401. Hearsay is inadmissible. M. R. Evid. 802.

¶5 Burnham testified about her prior relationship and marriage to John; several instances of John's emotional and physical abuse against her; an incident where John admitted that he was angry at their child and threw an object, which missed the child and hit the wall, causing a hole in the sheetrock; John's relinquishment of his parental rights to he and Burnham's child; and an allegation of child abuse she made against John that caused Child Protective Services to investigate him. Burnham testified that their son apologized for causing the hole in the wall. When prompted that it was not his fault John had thrown something at the wall, the son told Burnham it was John throwing him and his head, not an object, that caused the hole in the sheetrock. It was after this incident that Burnham called Child Protective Services and made an allegation of child abuse against John. This testimony garnered seven objections based on hearsay and one on relevance. The District Court stated, "I'm going to allow the witness to testify to what the child said to her for the limited purpose of explaining what actions [Burnham] took and why."

¶6 Burnham's testimony regarding her prior relationship and marriage to John did not constitute hearsay. In general, Burnham testified based upon her personal knowledge

3

about her relationship with John, their child, and their family dynamics. Burnham's testimony regarding the incident where John allegedly threw their son into a wall and the resulting child abuse investigation was relevant to the parenting proceeding focused on developing a parenting plan for John and Kayleen's minor child. As explained by the District Court, Burnham's testimony regarding what their son told her about the wall incident was offered and accepted by the court, not to prove the truth of the matter asserted—that John actually threw their son into a wall—but for the limited purpose of explaining why Burnham called Child Protective Services. Because the purpose of the statement was not to prove the truth of the matter asserted, it was not hearsay, and was admissible because of its relevance. The District Court did not err in allowing Burnham's testimony. We affirm the District Court on this issue.

¶7 The second issue John raises on appeal is whether the District Court erred in allowing Kayleen's pastor, Lawrence Nicholas (Nicholas), to testify. John claims that Nicholas' testimony was prohibited under §§ 26-1-804, -813 and 40-4-303, MCA, and M. R. Evid. 802. Section 26-1-804, MCA, provides that a member of the clergy or priest may not, without consent of the person confessing, be examined as to any confession made to them. Section 26-1-813(2)(a), MCA, provides that, except if consented to in writing by both parties, mediation discussions are confidential. Section 40-4-303, MCA, provides mediation proceedings are subject to confidentiality and privileges provisions of § 26-1-813, MCA. Hearsay is inadmissible. M. R. Evid. 802.

¶8 Nicholas testified that he knew Kayleen because she attends his church and that he met John through Kayleen. He testified he had known Kayleen for three or more years,

4

had performed John and Kayleen's marriage ceremony, and later held one marital counseling session with them. John objected to Nicholas' testimony on the grounds of pastor privilege, mediator privilege, and hearsay. Nicholas testified that before John came to the session, he found out that Kayleen was afraid of John, John drank, and got angry when he drank. Nicholas testified that John arrived late and appeared very angry. Nicholas testified that "because [John] was that angry," he was concerned he might need to "jump in between both of them." Nicholas testified that John left the session early, Nicholas heard him peeling out of the church's gravel parking lot, and that he had not seen or spoken to John since. When Kayleen's attorney asked Nicholas, "if Kayleen told you that she was afraid of John, based upon that meeting would you believe that her fears are justified?" Nicholas answered, "Yeah."

¶9 Section 26-1-804, MCA, does not apply and did not prohibit Nicholas' testimony because Nicholas did not testify as to any confession John made to Nicholas. Sections 26-1-804, -813, MCA, do not apply and did not prohibit Nicholas' testimony because Nicholas did not testify as to any confidential discussions made during mediation. The rule against hearsay does not apply and did not prohibit Nicholas' testimony because Nicholas testified about his personal observation of the parties' behavior and actions, and not specific statements made or offered for their truth. The District Court did not err in allowing Nicholas' testimony. We affirm the District Court on this issue.

¶10 The third issue John raises on appeal is whether the District Court erred by requiring John to have supervised visitation with D.J.W. in its Final Parenting Plan. John contends that the District Court lacked substantial evidence and failed to make a finding

5

required under § 40-4-218(2), MCA. "[I]f the court finds that in the absence of the order the child's physical health would be endangered or the child's emotional development significantly impaired, the court may order supervised visitation by the noncustodial parent." Section 40-4-218(2), MCA. This provision does not require the court make a specific finding or that it be included in the parenting plan. We review a district court's factual findings pertaining to a parenting plan to determine if they are clearly erroneous. *In re Marriage of Anderson*, 2014 MT 111, ¶ 11, 374 Mont. 526, 323 P.3d 895 (citation omitted). A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the evidence convinces us that the district court made a mistake. *Anderson*, ¶ 11 (citation omitted).

¶11 In the Final Parenting Plan, the District Court found D.J.W. would primarily reside with Kayleen, the custodial parent, and that John would have supervised visitation with D.J.W. two Saturdays per month. In making its determination, the District Court recognized that John's "chemical dependency . . . is a factor;" that "physical abuse and the threat of physical abuse by [John] against [Kayleen] and her children is a factor;" and that a "Permanent Restraining Order, Cause No. 14-060-TPO, has been issued in the Tribal Court of the Confederated Salish and Kootenai Tribes prohibiting [John] from any contact with [Kayleen] or her children." The Final Parenting Plan stated, there "are circumstances which warrant a limit or restraint on access to [D.J.W.] by [John.]" It also stated that the Final Parenting Plan would be reviewed annually and be modifiable when necessary to serve D.J.W.'s needs. When the Final Parenting Plan was ordered, John had

not met D.J.W. or requested to do so. The District Court did not err in granting John supervised visitation because substantial evidence supported a finding that, without supervised visits, D.J.W.'s physical health would be endangered or his emotional development significantly impaired. We affirm the District Court on this issue.

¶12 The fourth issue John raises on appeal is whether the District Court erred in permitting the prevailing party to recover attorney fees in future modifications to the Final Parenting Plan. Section 40-4-110, MCA, governs costs associated with proceedings involving marriage, termination of marriage, child custody, and support. That section reads, in pertinent part:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 [Marriage] and 4 [Termination of Marriage, Child Custody, Support] and for professional fees, including sums for legal and professional services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

Section 40-4-110(1), MCA. The Final Parenting Plan states that "[s]hould Court action occur, the prevailing party shall be awarded attorney fees." This provision in the Final Parenting Plan is impermissible because it conflicts with § 40-4-110(1), MCA, in that it does not require or allow the District Court to consider the financial resources of both parties before awarding attorney fees. The District Court erred in including such a provision in the Final Parenting Plan, which is inconsistent with the requirements of § 40-4-110(1), MCA. We reverse the District Court on this issue and remand with instructions to vacate this provision of the Final Parenting Plan.

¶13 The fifth issue John raises on appeal is whether the District Court erred by failing to include, in its Final Decree, a requirement that Kayleen reimburse John for $500 worth of hay John fed to Kayleen's cattle. Kayleen concedes this issue, stating the "District Court record is clear, that Kayleen did not object to paying Appellant $500.00 for a hay credit." This issue is not contested. The District Court erred by failing to include a requirement that Kayleen reimburse John for $500 worth of hay. We reverse the District Court on this issue and remand with instructions to credit John with $500.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no issues of first impression and does not establish new precedent or modify existing precedent.

¶15 Affirmed in part, reversed in part, and remanded for modification of the Final Parenting Plan and Final Decree consistent with this Opinion.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE