FILED

01/16/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0545

DA 22-0545

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 6N

IN RE THE MARRIAGE OF:

LINDSAY B. GOUDREAU,

        Petitioner, Appellee,
        and Cross-Appellant,

  and

JEFFREY A. GOUDREAU,

        Respondent, Appellant,
        and Cross-Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DR-15-2020-064
                Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Penni L. Chisholm, Dean Chisholm, Chisholm & Chisholm, P.C.,
                Columbia Falls, Montana

        For Appellee:

                David F. Stufft, Attorney at Law, Kalispell, Montana

                           Submitted on Briefs:  May 24, 2023

                                 Decided:  January 16, 2024

Filed:

                _____
                               Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Jeffrey A. Goudreau ("Jeff") appeals from the Eleventh Judicial District Court's Findings of Fact, Conclusions of Law, and Decree of Dissolution ("Decree") and Final Parenting Plan. Lindsay B. Goudreau ("Lindsay") cross-appeals.

¶3 Jeff and Lindsay married in October of 2013. They have two children together. Lindsay has a child from a previous marriage. They have lived separately since January 10, 2020. On January 21, 2020, Lindsay filed a petition for dissolution. The District Court held a two-day bench trial, after which it issued the June 7, 2022 Decree and Final Parenting Plan.

¶4 Prior to their marriage, Jeff owned property on Eckleberry Drive in Columbia Falls. In December of 2014, Jeff sold the Eckleberry Drive property and received net proceeds of $199,291. Lindsay helped to avoid a real estate commission by assisting in the marketing of the Eckleberry Drive property. Two weeks later, the parties jointly purchased a parcel of land on Oakmont Lane for $118,500. Jeff and Lindsay bought the Oakmont Lane property and built their home on it, financed from the proceeds from the sale of the Eckleberry Drive property, $49,000 from Jeff's savings, and a March 2016 loan of $73,190 in Jeff's name. Jeff and Lindsay also rented out a site on the property for RV and tent

camping, with plans to use the property for additional income and Lindsay's budding photography business.

¶5 Less than two months after separating, Lindsay purchased a $350,000 home on Second Avenue West in Columbia Falls using a $220,000 loan and most of a $169,000 payment from her grandmother. The purchase and bank loan were in Lindsay's name alone.

¶6 The parties reached an interim financial agreement ("Interim Agreement") approved by the District Court on May 5, 2020. Pursuant to the Interim Agreement, Jeff paid Lindsay a single installment of $30,000 and $900 per month for temporary family support. The Interim Agreement also included an interim parenting plan which provided that the parties would share parenting time with their two children, with Lindsay receiving eight nights and Jeff receiving six nights during every two-week period. Jeff received additional time when Lindsay traveled to exchange her oldest child with his father and paternal grandparents.

¶7 After trial, the District Court adopted the interim parenting plan without any changes. The Decree allowed Jeff to choose between retaining the Oakmont Lane property or selling the property. The District Court valued the Oakmont Lane property at $1,075,000 and awarded Lindsay half of the net equity of the property after accounting for Jeff's premarital contributions and two outstanding encumbrances, which Jeff was to assume in full if he elected to retain the Oakmont Lane property. The Decree calculated this amount to be $406,900 should Jeff choose to retain the property. Both parties filed

post-judgment motions seeking amendments to, and clarifications of, the Decree. The motions were deemed denied after the District Court did not rule on either within 60 days.

¶8     A district court's ruling on a discovery matter is reviewed to determine whether the district court abused its discretion. *In re S.C.*, 2005 MT 241, ¶ 16, 328 Mont. 476, 121 P.3d 552 (citation omitted). "A district court's valuation of a marital estate is a discretionary ruling that we review for an abuse of discretion." *In re Marriage of Hutchins*, 2018 MT 275, ¶ 8, 393 Mont. 283, 430 P.3d 502 (citation omitted). "A district court's apportionment of the marital estate will stand unless there was a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice." *Marriage of Hutchins*, ¶ 7 (citation omitted). "We review a district court's division of marital property to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct." *Marriage of Hutchins*, ¶ 7 (citation omitted). A district court's award of child support will not be overturned absent an abuse of discretion. *In re Marriage of Anderson*, 2014 MT 111, ¶ 11, 374 Mont. 526, 323 P.3d 895. "A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *In re Marriage of Frank*, 2022 MT 179, ¶ 32, 410 Mont. 73, 517 P.3d 188 (citation omitted).

¶9     A district court's findings of fact are reviewed for clear error. *Marriage of Frank*, ¶ 32 (citation omitted). "A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence or our review

4

of the record convinces us that the district court made a mistake." *Marriage of Frank*,¶ 32 (citation omitted). "If the findings are not clearly erroneous, the court's division of property will be affirmed absent an abuse of discretion." *Marriage of Frank*, ¶ 32 (citing *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39).

¶10     We address the following issues: (1) whether the District Court abused its discretion on several discovery rulings and by declining to sanction Lindsay incident to Jeff's motion to compel; (2) whether the District Court's findings regarding the valuation of the marital estate were clearly erroneous; (3) whether the District Court abused its discretion regarding the valuation and division of the marital estate; (4) whether the District Court abused its discretion in adopting the Final Parenting Plan; (5) whether the District abused its discretion in its award of child support; and (6) whether the District Court abused its discretion in denying the parties' post-judgment motions for clarification of and amendments to the Decree.[1]  We affirm in part and remand for correction of clerical errors in the Decree.

Discovery Rulings

¶11     Jeff argues that Lindsay's tax returns and profit-loss reports, provided in discovery, were not sufficient for the District Court to determine her income for purposes of its child support calculation and therefore the District Court's denial of Jeff's motion to compel

---

[1] Lindsay requested at trial, in her proposed findings, and in her post-judgment motion that the District Court restore her maiden name of Lindsay Beth Dahl.  Section 40-4-108(5), MCA, states that "[u]pon request by a party whose marriage is dissolved or declared invalid, the court shall order the party's maiden or birth name or a former name restored."  Jeff does not contest this issue on appeal.  We remand for correction of this oversight.

5

additional information was an abuse of discretion that prevented Jeff from effectively presenting his case at trial. Jeff relies on Admin. R. M. 37.62.105(2)(b) (2021), which provides that income for a self-employed parent is calculated as "gross receipts minus reasonable and necessary expenses."

¶12 In response to Jeff's discovery requests, Lindsay provided tax returns for the years 2019 and 2020. Her 2019 tax return reflected a net business income of $20,746. Her 2020 tax return reflected a net business income of $16,604. Although Lindsay did not have a 2021 tax return to provide, she provided a profit and loss report for 2021, which reflected a substantial increase of her net income over the previous two years of $31,655.16. Admin. R. M. 37.62.105(1) (2021) provides that the determination of income for child support calculations must "fairly reflect[] a parent's resources available for child support." "Interpreting this framework, this Court 'has recommended consideration of at least two years of income taxes when a district court is determining gross income.'" *Marriage of Anderson*, ¶ 14 (citation omitted). Not only did Lindsay's tax returns provide estimates of business-related deductions, but her profit and loss statements helped to paint an even more complete picture by listing expenses for advertising and marketing, computer and internet expenses, third-party contractors, graphic design, home office expenses, insurance, software, telephone, and website expenses between January 1, 2021, and December 31, 2021. Although Jeff may find Lindsay's 2019 and 2020 tax returns and her 2021 profit and loss report inadequate, the District Court did not abuse its discretion in denying Jeff's motion to compel in this regard.

¶13 Jeff next asserts the District Court abused its discretion by allowing Lindsay's expert witness, Brian Murphy, to testify regarding his valuation of the Oakmont Lane property. Jeff argues that he was prejudiced because Murphy did not provide a curriculum vitae, because Murphy was allowed to testify as to the gross amount of his real estate sales in the previous year, and because Murphy was allowed to testify that he was a developer of a subdivision near the Oakmont Lane property.

¶14 Murphy was called to testify to his opinion that the Oakmont Lane property was worth $1.45 million based on his comparable market analysis ("CMA"), which was disclosed in discovery. Although Murphy did not have a curriculum vitae to provide, Jeff does not dispute that Murphy is a realtor in the Flathead Valley who was qualified to conduct a CMA. While Murphy's testimony about how much real estate he sold in the previous year and his role as a developer of a nearby subdivision may possibly bear tangentially on the substantive aspect of his testimony—his estimated value of the Oakmont Lane property—the District Court did not abuse its discretion by overruling Jeff's objections to the testimony.

¶15 Jeff next argues the District Court erred when it denied his motion to reopen discovery and to compel Lindsay to produce information regarding her previous custody litigation with her ex-husband, the father of her oldest child. Jeff specifically requested information regarding the child's mental health and medications he may be taking, and the parenting order and final parenting plan that Lindsay and her ex-husband had entered into, which were in a sealed court record in Missoula County. Lindsay objected to the requests

7

on the basis that the documents were privileged. In his motion to reopen discovery, Jeff sought leave to serve a subpoena duces tecum on Lindsay's ex-husband for the documents and if he refused to produce them pursuant to the subpoena, Jeff requested the opportunity to obtain the documents from the Missoula County Clerk of Court which, as Jeff noted, "has refused to provide the documents because the file is sealed." Jeff's stated basis for seeking the Missoula County documents was that he "believe[d] that statements [Lindsay] made in that litigation will contradict statements made by [her] in this parenting litigation."

¶16 The District Court denied Jeff's motion, holding: "[T]he Court will disallow access to Lindsay's dissolution file in Missoula County given that the simple statement that she might make contradictory claims is insufficient to allow access to such information if sealed by the court in Missoula." Whatever possible impeachment benefit Jeff believed he may have gained from access to this information, liberal discovery does not include delving into a minor's medical history and sealed court records based on a summary assertion that a party "believes that statements . . . made in that litigation will contradict statements" made by the opposing party in the pending litigation. The District Court did not abuse its discretion by denying Jeff's access to these records.

¶17 Jeff next contends the District Court erred by failing to impose sanctions under M. R. Civ. P. 37(a)(5)(A), which provides that a court must order the payment of reasonable expenses by the party whose conduct necessitated the motion to compel if the motion to compel is granted. M. R. Civ. P. 37(a)(5)(A). Jeff argues, "[a]n award of Jeff's attorneys' fees and costs was mandatory because it is undisputed that Lindsay was

8

compelled to provide some supplemental responses." The operative word in Jeff's argument is "some." M. R. Civ. P. 37(a)(5)(C) provides that the court *may* order the payment of reasonable expenses if the motion to compel is granted in part and denied in part. M. R. Civ. P. 37(a)(5)(C) (emphasis added). Jeff's motion to compel alleged Lindsay had "failed to provide full and complete responses" to nine interrogatories, four requests for production, and one request for admission. Jeff's motion to compel also alleged Lindsay had not yet supplemented her answers to five other interrogatories and six other requests for production. The District Court granted Jeff's motion to compel as it pertained to five of the interrogatories and six of the requests for production. Since Jeff's motion was not granted in full, the District Court was not mandated to award Jeff his attorney fees and costs.

The District Court's valuation and division of the marital estate.

¶18     Both parties raise claims regarding the District Court's valuation and division of the marital estate. Jeff argues the District Court erred in valuing the Oakmont Lane property at $1,075,000 as of the time of dissolution because: (1) the valuation relied on evidence that should have been excluded due to discovery abuses;[2] (2) the District Court's finding that the Interim Agreement was an ongoing "joint venture" was not supported by substantial evidence; (3) the District Court failed to properly credit his expert's appraisal

---

[2] Having already rejected Jeff's argument that the District Court did not err by excluding Brian Murphy's CMA as to Oakmont Lane property (see Opinion, ¶¶ 13-14), we need not address the issue again as it relates to the District Court's factual findings of the property's valuation.

9

of the Oakmont Lane property; and (4) our holding in *Marriage of Frank* requires valuation at the time of separation to achieve an equitable distribution of the estate.

¶19 Lindsay claims valuing assets other than the Oakmont Lane property as of the time of separation results in a windfall for Jeff and we should remand with instructions to value all assets at the time of dissolution.

¶20 Jeff contends that because the District Court found that it could not give equal weight to Murphy's opinion relative to the appraisal of Jeff's expert, Gene Lard, its valuation of the Oakmont Lane property at the midpoint between Lard's appraisal and Murphy's CMA was not supported by substantial evidence. Lindsay contends that the value of the Oakmont Lane property should have been consistent with Murphy's CMA. Both parties are incorrect.

¶21 "A district court may adopt any reasonable valuation of property supported by the record." *Marriage of Hutchins*, ¶ 50 (citations omitted). Although both Jeff and Lindsay are critical of the District Court's final valuation of the Oakmont Lane property, the District Court's Findings of Fact reflect that it rendered a thoughtful decision based on the facts presented to it by both parties. The District Court noted that it was troubled by two experts with significant backgrounds on valuing property coming to such vastly different conclusions on the value of the property. Ultimately, the District Court recognized that the only true measure of the property's fair market value is determined by the free market, but it considered the equitable value of Jeff being allowed to retain the property for his and the children's benefit. While both parties take issue with what they perceive as the District

Court simply splitting the difference between their experts' respective opinions—both of which find support in each expert's testimony regarding the bases of their opinions—we cannot say the District Court's findings were unsupported in light of the vastly differing estimates.

¶22    Turning to the parties' interpretations of our decision in *Marriage of Frank*, there we affirmed that district courts have "broad discretion to equitably apportion the marital estate in a manner equitable to each party according to the circumstances of each case." *Marriage of Frank*, ¶ 35 (citing *Marriage of Funk*, ¶¶ 16, 19). We explained that "[g]enerally, valuing the property near the time of dissolution results in equitable apportionment, but unique circumstances may call for valuation at a different time." *Marriage of Frank*, ¶ 39 (citation omitted). We also explained that "[w]hen conflicting valuation evidence is presented the district court must indicate the basis for its determination" and that "[a]s long as the court's valuation is reasonable in light of the evidence submitted, we will not disturb the finding on appeal." *Marriage of Frank*, ¶ 39 (citations omitted). In *Marriage of Frank* we upheld the district court's decision to value different assets at different times. *Marriage of Frank,* ¶¶ 67-71. That holding was consistent with long-standing precedent. *See In re Marriage of Walls*, 278 Mont. 413, 417, 925 P.2d 483, 485 (1996) (recognizing that "under [some] circumstances, selection of a single evaluation point for determining net worth of the parties could create an inequitable disposition"); *see also In re Marriage of Milesnick*, 235 Mont. 88, 96, 765 P.2d 751, 756 (1988) (explaining that "[i]f a single valuation date would lead to an inequitable

11

distribution of property, the District Court may choose several different times for valuation.").

¶23 Considering the principles articulated in *Marriage of Frank* and the circumstances presented here, Jeff's argument that *Marriage of Frank* requires the District Court to value the Oakmont Lane property at the time of separation is unavailing. The same holds true for Lindsay's arguments regarding other assets that were valued as of the time of separation. The District Court reasonably explained in its detailed Findings of Fact and Conclusions of Law that because Jeff and Lindsay were completely financially separated by January 10, 2020, valuing the marital estate at the time of separation for all assets other than the Oakmont Lane property was equitable.

¶24 As for the Oakmont Lane property, the District Court noted that Jeff and Lindsay agreed to split any profits received from operating the property consistent with their previously professed intent to derive passive income by renting sites on the property. Based on this ongoing venture, the District Court determined that an "ongoing financial partnership" existed which warranted excepting the Oakmont Lane property from the other property which was valued as of the date of separation. The District Court provided a reasoned basis for this exception that finds support in the record. The District Court did not abuse its discretion in valuing the Oakmont Lane property at the time of dissolution while valuing all other parts of the marital estate at the time of separation.

Parenting Plan

¶25    Jeff appeals the District Court's Final Parenting Plan on the grounds that: (1) the District Court's findings of fact were clearly erroneous; (2) the District Court erred in failing to enforce § 40-4-234, MCA, which requires parents to submit proposed final parenting plans; and (3) the Final Parenting Plan here runs afoul of a parent's constitutionally protected right to parent under § 40-4-227, MCA.

¶26    The Final Parenting Plan provided that Jeff would receive parenting time weekly from Thursday evening to Saturday morning, which was extended through Monday mornings every other weekend.[3] Under this schedule, Jeff received six overnights with the children every two weeks, with Lindsay receiving the remaining eight days. The Final Parenting Plan noted that Jeff was to receive additional time when Lindsay traveled to exchange her oldest child with her ex-husband, and the court explained at length that the parties were free to deviate from the plan by mutual agreement.

¶27    After reviewing the record, we are not convinced the District Court's findings regarding the Final Parenting Plan were clearly erroneous or that Jeff has been deprived of his right to "regular and ongoing parental contact" with his children. *Northcutt v. McLaughlin (In re G.M.N.)*, 2019 MT 18, ¶ 12, 394 Mont. 112, 433 P.3d 715. Jeff's argument that Lindsay's alleged failure to file a proposed final parenting plan mandated that the District Court adopt his proposed plan similarly misses the mark. The record clearly demonstrates the District Court fulfilled its essential mandate to consider all of the

---

[3] This feature of the plan reflected Lindsay's undisputed testimony that Jeff's work schedule did not require him to work on Fridays.

13

"best interest of the child" factors enumerated under § 40-4-212(1)(a)–(m), MCA. *See Penderson v. Orvis (In re G.M.O.)*, 2017 MT 116, ¶ 10, 387 Mont. 390, 394 P.3d 913. That the District Court placed emphasis on the "continuity and stability of care" factor when adopting the parties' interim parenting plan as the Final Parenting Plan does not provide grounds for reversal.

Child Support

¶28 Jeff appeals the District Court's determination of Lindsay's income for child support purposes and the District Court's denial of his M. R. Civ. P. 60(b) motion based on newly discovered evidence of additional income derived from short term rentals of her post-marital home, which Jeff asserted in his post-judgment motion "adds up to $33,000 of income from the end of June and all of July." Jeff asserts the District Court's "finding was based on speculation and should be reversed" considering evidence at trial regarding Lindsay's gross income from her photography business and an unusual reference to Lindsay's propensity to ski.

¶29 Based on the evidence at trial, the District Court made oral findings regarding Lindsay's business practices, expenses, and ability to work. As discussed previously regarding Jeff's arguments on his discovery claims, the information provided by Lindsay was sufficient for the District Court to calculate her income. *See Marriage of Anderson*,¶ 14. The District Court also emphasized the difference between a party's net and gross income figures, especially in the context of a self-employed person such as Lindsay. Lindsay provided information on her business expenses in both her tax returns

and profit and loss statements, which contained itemized representations of the costs associated with the way Lindsay does business. Further, in finding Lindsay's net income was $32,000, the District Court implicitly rejected Jeff's other attempts to extrapolate her income based on his assumptions regarding her income, which included assertions that Lindsay's gross income should have been found to exceed $98,000. Jeff has not demonstrated the District Court abused its discretion regarding its calculation of Lindsay's income for child support purposes, or its denial of Jeff's Rule 60(b) motion based on conclusory assertions of "newly discovered evidence." We accordingly decline to disturb the award of child support in the amount of $713 per month.

Clerical Errors

¶30 Both parties raise claims regarding clerical errors and oversights by the District Court, which the District Court failed to correct pursuant to the parties' post-judgment motions. First, Jeff claimed in his Motion for Relief from Judgment Pursuant to Mont. R. Civ. P. 59 and 60 that the District Court erroneously credited him with only $118,500 for his contribution to the purchase and construction of the Oakmont Lane property, instead of the full $199,291 he received from the sale of the Eckleberry Drive property. Jeff is correct.

¶31 The District Court concluded that "Jeff should receive credit for his financial investment in the property with pre-marital assets that are directly traceable, specifically the proceeds from the sale of the Eckleberry Drive property to the extent those were contributed, and also the money from his pre-marital savings." Jeff testified, and the District Court found in the Decree, that Jeff received $199,291 in net proceeds from the

15

sale of the Eckleberry Drive property. The District Court also found that the Oakmont Lane property was purchased for $118,500; that the Oakmont Lane property "was purchased with proceeds from the sale of the Eckleberry Drive property"; and that "Jeff used *the remainder of the proceeds* and over $49,000 from his savings to build a house on the property." (Emphasis added.) These facts were uncontroverted at trial, and the District Court made no findings indicating an intent to give Jeff credit for less than the full proceeds of the Eckleberry Drive property sale. Jeff's pre-marital contributions total $248,291, instead of $168,500. Given that the District Court ordered Jeff to assume responsibility for the outstanding encumbrances against the Oakmont Lane property, the total deductions are $341,709, the net theoretical equity of the home is $733,291, and Lindsay's payment, should Jeff choose to retain the Oakmont Lane property is $366,645.50.[4] The District Court's denial of Jeff's post-judgment motion for relief on this issue was an abuse of discretion and should be corrected on remand.

¶32 Jeff also asserts the District Court should have deducted the $23,000 he paid Lindsay pursuant to the Interim Agreement from the sum owed to her either under the buyout provision or the sale of the Oakmont Lane property. Jeff points to the portion of the Interim Agreement which provides:

> The remaining $23,000.00 may or may not be considered an advance or offset toward any future settlement or judicial determination on the issues of property/debt division in this matter, and each party reserves their right to

---

[4] Jeff also asserts the District Court erred in failing to set forth the disposition of funds should Jeff elect to sell the property instead of buying out Lindsay's share. Pursuant to the Decree, Lindsay would receive half of the net proceeds of the sale, after accounting for Jeff's contribution of pre-marital funds totaling $248,291.

16

present their position regarding the same in settlement negotiations or any future hearings or trial in this matter.

Jeff testified at trial that his property settlement payment should be reduced by $23,000. The explicit terms of the Interim Agreement vested the District Court with discretion on the issue and exercising that discretion in a manner disagreeable to one party does not establish an abuse of this vested discretion.

Personal Property Items

¶33    The final contested issue before us is Lindsay's claim on cross-appeal that Jeff should be ordered to return specific items of personal property.  On the issue of specific items of personal property, the District Court stated in the Decree that:

> The Court finds that there was significant co-mingling of personal property and that trying to separate it out is impossible based on the evidence presented.  The Court is not going to assign values to any item of personal property, including the so-called business assets involving Lindsay's photography activities.  The Court believes that each party has received a fair and equitable share of the personal property owned by them, regardless of when acquired, and that those offset and neither is indebted to the other.  Each shall receive and have, free from any claim of the other, the personal property currently in his or her possession with the exception of the items listed in Finding 52 above, and the excavator which will be sold and the proceeds divided.

The District Court's determination regarding the division of Jeff and Lindsay's property is supported by substantial evidence.  Testimony at trial established that through their time together, Jeff and Lindsay comingled personal property.  Testimony also established that much of this property was lost or unaccounted for.  That the District Court made this finding and the accompanying practical conclusion that parsing through the parties'

property on an item-by-item basis was an exercise of futility does not demonstrate an abuse of discretion.

¶34    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.  We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE